CHARLES FRITZ, JR.,

v.

MARGUERITA FRITZ.

[Decided February 29th, 1912.]

Where a son, who had only shortly reached his majority, conveyed all of his property, which consisted of a tract of land, by way of gift to his father, who was a masterful man, the conveyance is invalid, it appearing that the son had no competent disinterested advice.

Heard on bill, amended bill, answer, replication and proofs in open court.

*Messrs. Tennant & Haight,* for the complainant.

*Mr. J. Emil Walscheid,* for the defendant.

GARRISON, V. C.

The object of the bill in this suit is to have it decreed that a piece of property in the township of Union, Hudson county, New Jersey, belongs to the complainant.

The facts necessary to be considered in arriving at a decision are as follows: Charles Fritz, Jr., was the son of Charles Fritz, Sr., and his wife Agnes. The parents came to this country, leaving the boy with his grandparents at Darmstadt, Germany. He lived there with his father's people until 1897, at which time he was about fourteen years of age. The father was engaged in the manufacture of trusses. The boy had broken his arm, and it had not mended properly. The father sent for the boy to come over here to receive expert surgical treatment and because he had a place for him in his own business. Relatives and friends of the boy raised a sum of money, approximating $460, and gave it to him, and he had this sum with him when he came to this country. His father had left his wife, the boy's mother, and was

living with Marguerita Stock, whom he subsequently married, and who is the defendant in this suit.

When the boy reached this country he had his arm examined by some surgeons selected by the father, and had an X-ray picture taken, and this is all that ever was done concerning the arm. The total expense could not have been more than fifty or sixty dollars; so that the father, out of the money which the boy brought to this country and gave him, had about four hundred dollars left. The boy worked at various employments. In the early part of April, 1902, the land in question was purchased from a man named Limouze. Limouze testifies that the father told him that he feared trouble with his wife since he had gone to live with this other woman, and that he suggested putting the title in the name of the boy, but that when Limouze, the real estate agent, learned that the boy was under age he suggested that it be taken in the name of the father as trustee for the boy. It is the fact that the title was made to Charles Fritz, Sr., as trustee for Charles Fritz, Jr. The money paid down was $400, and the balance of the $1,200 consideration money was represented by an $800 mortgage which was already on the property. There is testimony of impartial witnesses that the father at various times said that he had put the boy's money into this property, and said that the property was the boy's, and, when the boy was working upon the property, remarked that he was "working upon his own property."

The father and the woman with whom he was living and the son (although the latter perhaps not continuously) lived upon the property in question down to the death of the father on the 24th of September, 1908, the boy working and giving his wages to his father.

On the 29th of October, 1907, Charles Fritz, Sr., as trustee for Charles Fritz, Jr., and Marguerita Fritz, the defendant (who had married him in the preceding February) made a deed to one Geitze, who acted as a conduit, and who made a deed to Charles Fritz, Sr., and Marguerita Fritz, his wife, and at the same time Charles Fritz, Jr., made a deed to Charles Fritz, Sr., and Marguerita Fritz, his wife. The effect of these transactions, so far as their legal significance was concerned, was to vest an

estate by the entireties in Charles Fritz, Sr., and Marguerita, his wife.

It appears from the testimony of Mr. Walscheid that he was engaged by Charles Fritz, Sr., to draw the deeds in question, and that he did so, and that he explained to Charles Fritz, Jr., the contents of the deed from Charles Fritz, Jr., to Charles Fritz, Sr., and wife.

The complainant, at the time that this deed was made, was twenty-four years of age, and had no property excepting this.

His explanation of his signature to the deed is that he thought he was taking part in a transaction which resulted in money being raised on the property to pay assessments then due. I shall found no decree in his favor upon this contention. He signed the deed and acknowledged it, and the uncontradicted evidence convinces me that he had the same explained to him and that he read it.

I find as a fact that the father was a masterful man who dominated his son throughout the entire life of the father; that the son's money was the consideration money used in the purchase of the land in question; that the title which was taken in the name of Charles Fritz, Sr., as trustee for Charles Fritz, Jr., correctly represented the legal and equitable situation at the time that the property was purchased; that either by the doctrine of resulting trusts, or by the acceptance of this deed by Charles Fritz, Sr., made to him as trustee, or by the effect of his signing the subsequent deed which recites that he was trustee, the case is free from any violation of the statute of frauds, and the trust is clearly proven, manifested and legally enforceable.

At the time that the deeds were made which vested the legal title in Charles Fritz, Sr., and Marguerita, his wife, the situation was that Charles Fritz, Sr., was the trustee for Charles Fritz, Jr., of the land in question; that the money which had gone into that property was the son's; that the father dominated the son; that the son had no independent advice concerning the making of the deed by him to his father, or, if given effect, transferred as a gift to his father all that he possessed in the way of property.

Under these circumstances and the findings of fact in this case, the doctrine of *Slack* v. *Rees* (*Court of Errors and Appeals,*

*1903), 66 N. J. Eq. (21 Dick.) 447,* clearly applies. In that case it was laid down that where a relation of trust and confidence exists between a donor and a donee, a deed of gift of all of the donor's property which contains no power of revocation will be set aside if it appears that the donor did not have the benefit of competent and independent advice as to the effect of the deed. The purpose of the rule, as stated in that case, is not so much to afford protection to the donor against the consequences of undue influence exercised over him by the donee as it is to afford him protection against the consequences of voluntary action on his part induced by the existence of the relationship between them, the effect of which upon his own interests he may only partially understand or appreciate. And in the later case of *Post* v. *Hagen (Court of Errors and Appeals, 1906), 71 N. J. Eq. (1 Buch.) 234,* which reaffirms and applies the same doctrine, it is pointed out (at *p. 243*) that "proper independent advice in this connection means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was, furthermore, so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself of his proposed benefaction."

The principle applied in *Slack* v. *Rees, supra,* is, as therein shown, of ancient origin, and has since been applied and enforced in the following cases in the court of errors and appeals and in the court of chancery: *Albert* v. *Haeberly (Court of Errors and Appeals, 1905), 68 N. J. Eq. (2 Robb.) 664; Post* v. *Hagan (Court of Errors and Appeals, 1906), 71 N. J. Eq. (1 Buch.) 234; Walsh* v. *Harkey, (Vice-Chancellor Emery, 1908), 69 Atl. Rep. 726; Monoghan* v. *Collins (Vice-Chancellor Walker, 1908), 71 Atl. Rep. 617.*

To the suggestion that the doctrine in question has been changed, modified or weakened by the same court as shown in the case of *Fretz* v. *Roth (Court of Errors and Appeals, 1905), 70 N. J. Eq. (4 Robb.) 764,* I can only reply that the later cases, above cited, in the court of errors and appeals and in the

court of chancery, do not consider that such is the fact.. It is true that in *Fretz* v. *Roth* the same elements were supposed to be present—that, the court of chancery in that case found that a wife who was the dominant partner in the matrimonial relation, between whom and her husband of course a relation of confidence existed, had secured a lawyer to cause a conveyance to be made from her husband to her of all of his property, and that he did not have the benefit of independent advice and did not understand the effect of what he was doing, and that there was no power of revocation, and that the deed should therefore be set aside. This decision of the court of chancery was reversed in the court of errors and appeals, but I think it must be assumed that the reversal was based upon a different finding of fact rather than upon an overruling of previous decisions announcing well settled principles.

Every factor which was found to be necessary to apply the principle in question is present in the case at bar.

The deed by the complainant will be avoided; the deed by the trustee to the defendant will be found to vest in her such title as the trustee had; and, since the trust is a dry one, and the *cestui que trust* is now of age, I see no reason why the legal title should not be vested in him at once.

The form of the decree, however, will be settled upon notice.