## No. 10,101.

### BERLIN, ET AL. *v.* WAIT.

#### Decided July 3, 1922.

Action to cancel a warranty deed. Judgment for plaintiff.

### *Affirmed.*

1. DEED—*Escrow—Delivery.* Where a deed is placed in escrow to be delivered on the happening of a certain event, with power reserved in the grantor to change its terms or recall the deed, there is no delivery, the document never being actually delivered, and withdrawn and destroyed.

2. *Cancellation—Proof.* To justify the cancellation of a deed on the ground that it was procured as the result of undue influence, threats and misrepresentations, the proof must be definite and clear, and the facts in support of the fraud established beyond a reasonable doubt.

   Evidence reviewed and held sufficient under this rule.

3. WITNESSES—*Competency.* Record reviewed and held not to support the contention of plaintiffs in error that they were defending in a representative capacity as heirs, and that therefore defendant in error was an incompetent witness in her own behalf.

4. FRAUD—*Conveyance—Burden of Proof.* Where a deed was executed by one party to another, the conveyance being induced by misrepresentations of the grantee, between whom and the grantor confidential relations existed, it was incumbent on the former, in an action for the cancellation of the deed by the latter, to show the fairness of his conduct and dealings in the transaction, to the satisfaction of the court.

5. DEED—*Validity.* A grantee is not bound by a conveyance which was not what she supposed it to be, and which she did not intend to make, its execution being procured by undue influence.

6. *Fraud—Validity.* If an instrument was vitiated by frauds at the time of its execution, confession thereof by the one who perpetrated them, does not make it valid.

7.     *Undue Influence—Evidence.*  Evidence to the effect that a
grantor at the time of the execution of a conveyance was men-
tally incapable of making a valid deed and wholly unacquainted
with business affairs, is very potential in connection with the
question of undue influence.

*Error to the District Court of the City and County of Den-*
*ver, Hon. Greeley W. Whitford, Judge.*

Mr. ROBERT G. BOSWORTH, Messrs. PERSHING, NYE, FRY
& TALLMADGE, for plaintiffs in error.

Mr. WILLIAM W. GARWOOD, Mr. OMAR E. GARWOOD, Mr.
GEORGE OLIVER MARRS, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

THIS action was brought by Zelma A. Wait to set aside
and have cancelled a warranty deed which she executed
March 22, 1919, and delivered to George H. Berlin, the
former husband of her deceased daughter, which deed the
grantee placed on record.    Plaintiff, a woman over sixty
years of age, charges that while she was sick and in great
mental anguish as the result of the death of her daughter,
which occurred a few weeks before she executed this deed,
and while she was not mentally competent to transact busi-
ness, and because of her weakened physical and mental
condition brought about by her sorrow and illness, the de-
fendant, George H. Berlin, the grantee in the deed, who is
a man of strong personality, had so insinuated himself into
her confidence that she could not resist his importunities
and in such circumstances made the deed in question, and
as the result of fraudulent representations, undue influence
and by divers threats, and not of her own free will.

The defendant answered, denying the charges.    Leave
was granted to the defendant's son, Edgar Berlin, to ap-
pear in the action by his next friend, the said George H.
Berlin, and to protect his alleged rights in the property.
The defendant and intervener denied the charges of the

complaint and each filed a counterclaim or cross-complaint asserting title in the premises as heir of Mrs. Berlin and asked to have such interests determined and the title quieted.

The trial was to the court without a jury. Findings of fact generally upon all the issues, were made in favor of the plaintiff and a decree was entered cancelling her deed and quieting title to the property in her. From that judgment and decree the defendant and intervener are here with this writ of error.

In the briefs of plaintiffs in error it is said that the case naturally divides itself into two parts or branches: first, that the plaintiff, by her escrow deeds delivered to one Wilson in 1915, vested title to the property in question in her daughter, Edna Berlin, and upon the death of the latter, without a will, by the statute of this State, the property passed one-half to her husband, the defendant, and the other half to the intervener, her son. In part two they say that the plaintiff, by her deed of March 22, 1919, to George H. Berlin, vested legal title in him in trust for the use and benefit of the intervener. It will be observed that these two parts or branches of the case are inconsistent. If the property was conveyed in 1915 by the plaintiff to her daughter as the result of the escrow deeds, Mrs. Wait had no title which she could convey in 1919 to George H. Berlin. If Mrs. Berlin got no title, defendant and intervener are not here as heirs, or in a representative capacity, and plaintiff had a title to convey to defendant.

There is testimony to the effect, and the court so found, that when plaintiff placed the deeds in escrow with Wilson, which defendant and intervener say named Mrs. Berlin as grantee, she did so with the understanding upon her part, as well as that of the escrow holder, that she might make changes in them, as she saw fit, and she subsequently did make one or more changes; and that she reserved the right to withdraw the deeds from escrow, although instructing the escrow holder to deliver them to her daughter after her death, if the daughter was then living. That being true,

it sufficiently appears that the intervener and the defendant, as heirs of Mrs. Berlin, took nothing by these escrow deeds, for they were never delivered to the grantee and the same were withdrawn and destroyed before the death of the latter. While counsel for the plaintiffs in error make the contention that these escrow deeds were valid and title thereby was vested in the grantee, Mrs. Berlin, we can not disturb the finding of the trial court that the deeds were never delivered. 13 Cyc. 569, *et seq.; Childers v. Baird,* 59 Colo. 382, 148 Pac. 854.

The property, therefore, belonged to the plaintiff and her title was recognized by the defendant, and the property so remained the property of the plaintiff at the time that she executed the deed of March 22, 1919. The only issue of fact, therefore, is whether or not this deed was procured as the result of the alleged undue influence, threats and fraudulent representations by the grantee, Berlin.

We assume with the plaintiffs in error that to justify the cancelling of a deed the proof that it was procured by such improper motives must be definite and clear, and as one of our own decisions says, the facts in support of a claim to set aside a deed must be proved beyond a reasonable doubt. *Martinez v. Martinez,* 57 Colo. 292, 298, 141 Pac. 469. The trial court who heard this case and saw the witnesses as they testified, found that the evidence was of the character required by our decisions. The testimony is practically undisputed that at the time of the conveyance in question, which was about two months after the death of plaintiff's daughter, she, the plaintiff, was greatly depressed mentally, was suffering from gall stones and Bright's disease, and was in a weakened bodily condition, as well unsettled in her mental state. While it is true that these facts alone would not prevent her from giving a valid deed, they are circumstances of weight in determining whether or not undue influence was exercised upon her, and her will thereby overcome.

Plaintiff testified that the defendant is a man of strong and forceful personality. She had implicit trust and con-

fidence in him, and at the time of the conveyance was living with him, assisting in the care of his family, including her own grandson and two children of the defendant by a former marriage. The relation between them was one of confidence, and plaintiff at the time believed to be true all the representations made to her by the defendant. He told her that her title to the property was not good to the extent which she claimed, and, at best, she had title only to an undivided one-half, the other half being in the defendant and his minor son as the sole heirs of his deceased wife. He also told her that an effort was being made by relatives of her deceased husband to get this property from her, and that unless she made the deed in question to him, and as he wanted it, he would hold her liable for the value of the use and enjoyment of the premises which she claimed under her husband's deed, and that she would be deprived of this property by these relatives. He further told her that unless she made this conveyance, he would not permit her to visit her grandson or have access to him. She was devoted to her grandson, and, as the result of all these importunities and persuasions on the part of the defendant, she testified that her free will was overcome and that she made the conveyance as the result of the undue influences, false representations and threats of the defendant. It is true that the defendant denies these charges and says that his only object in procuring the conveyance to himself was for the benefit of his son, which was also the desire of the plaintiff. The court, however, evidently believed the testimony of the plaintiff and her witnesses. Several of them testified that, after this conveyance had been made by the plaintiff to the defendant, the latter told them that he had "put one over on the old lady," (referring to the plaintiff), and that he had blocked the scheme of her husband's relatives, which was to acquire ownership of the property.

There is evidence to the effect that, through the influence of the defendant, plaintiff was taken or sent by him to a lawyer of his own selection and prevented from having independent, competent legal advice, or advice of her own

friends, and that she did not understand the nature of the transaction or the legal effect or meaning of the deed which she was thus persuaded to execute. She admits that it has always been her intention, and is now, to give this property to her grandson when he is twenty-one years of age, and that she wants it held in trust for him until that time, but she did not intend to convey it to defendant, and was not aware as a matter of fact, that she had done so, but supposed she was making a provision for the benefit of her grandson in accordance with her own plan. She wanted the property to go to her grandson, if he lived, and wanted him to have it when he was twenty-one years of age, but, if he died, she wanted to make other provisions for disposing of the property.

We are constrained to hold, as did the district court, that the fraudulent representations, threats and the undue influence set forth in the complaint, were established by the evidence in accordance with the rule laid down by this court in a number of cases.

But it is said that there was no proof of these alleged acts of the defendant, except the testimony of the plaintiff, and that she was an incompetent witness under our statute, since the defendant and the intervener are defending the action in a representative capacity as heirs at law of Mrs. Berlin. We do not so understand. If the plaintiff had made a valid conveyance of the property to her daughter and such title had remained in the daughter up to the time of her death, then, under the law of this State, the defendant would be entitled to an undivided half, and the intervener to an undivided half of the property, and there might be some semblance of a claim that they appeared in this action as heirs at law of Mrs. Berlin. The trial court found, and we think correctly, that Mrs. Berlin never acquired any right, title or interest in this property. The plaintiff does not deny that her deeds to her daughter, if proper delivery had been made, would have conveyed good title. The plaintiff asserts only the invalidity of the deed of March 22, 1919, made direct to this defendant. She is

suing him and intervener as individuals and not as representatives of the estate of Mrs. Berlin. They are here defending as individuals and not as heirs of Mrs. Berlin. The plaintiff is not claiming anything from the estate of Mrs. Berlin, and she was clearly a competent witness against the defendant and intervener in their individual capacity. Without the testimony of plaintiff, we may add there is enough testimony in the record to warrant the decree of the court as to want of title in Mrs. Berlin.

Considering the confidential relation of the plaintiff and the defendant, under the authorities it was incumbent upon the defendant to show the fairness of his conduct in his dealings with her. He did not do this to the satisfaction of the trial court.

The defendant and intervener, through their counsel, lay much stress upon the fact that by this deed to the defendant, plaintiff was doing only what it was her intention to do, namely, to make provision for her grandson. It is true that such was her intention and as the result of a paper writing, which the defendant gave to the plaintiff at the time of the transaction, he was holding this property in trust for the use and benefit of his son, the plaintiff's grandchild, and the conveyance was upon the condition that the plaintiff should have such amount of the income from the property as was necessary for her maintenance and support during her life. But it is not true that the conveyance in question was what the plaintiff intended to make and supposed she was making. She did not wish the defendant to have any title in the property, either for his own benefit or as a trustee for his son. As above indicated, she wanted the boy to have this property when he reached the age of twenty-one years, but in case of his death, she intended to make other disposition of the property and did not want to make a conveyance that would, in case of the death of her grandson, inure to the benefit of the defendant. There was no provision in the deed providing for such disposition of the property as the plaintiff wished to make in the event of the death of her grandson.

It should also be said that the plaintiff, assuming her testimony to be true, did not have the benefit of intelligent advice of an attorney of her own choice as to what provisions were necessary for carrying out the intention which she said she disclosed to the attorney whom the defendant selected for her.  Counsel for the plaintiff are not attacking this attorney for any impropriety, nor do we intend to reflect in any degree upon him, but we are impressed with the conviction that the defendant's influence was so overpowering and controlling with the plaintiff that when she interviewed the attorney who drew the deed and the so-called trust agreement, the plaintiff, in her disclosures to the attorney, was merely imparting information which the defendant wished her to make.

Plaintiffs in error, apparently anticipating that the deed might be declared invalid on the grounds alleged, say that adequate relief may be afforded by the removal of the trustee and the appointing of a trustee satisfactory to the plaintiff.  And the defendant himself in his testimony says that he is willing to relinquish the trust conferred upon him or make such conveyance of the property as will secure for his son the rights which he insists that it was the intention of the plaintiff to give him.  This is upon the theory that he holds merely as trustee for the son and that which the deed accomplishes is only what the plaintiff herself intended to do, which was the vesting of the property ultimately in her grandson.  The defendant and intervener, therefore, say that the deed should not be cancelled, even though it was procured by fraud.  This reasoning is no more than plausible.  It is what the defendant did at the time, not what, after suit, he offers to do to prevent cancellation, that determines the validity of the instrument. If the instrument was vitiated by frauds at the time of its execution, confession thereof by the one who perpetrated them does not make the instrument valid.  But aside from this, the deed does not effectuate plaintiff's real intention. She testifies that it is her intention, now as always, to have her grandson enjoy this property but she wants to designate

for herself how, and the conditions under which, the enjoyment shall be had. So that the offer of the defendant to resign his trust, if he should make that offer, and his willingness to execute such a writing as may be necessary to enable his son to get this property, furnish no reason for refusing the cancellation of the deed, if it was procured by his fraudulent conduct.

On the question of the delivery of the deed in escrow, with the power or right reserved to the grantor of control over the instrument, and to make other disposition of the property conveyed, if she saw fit, see 13 Cyc. p. 569 and following. This authority and cases cited fully justify the plaintiff in this case in withdrawing the deeds from the escrow holder and destroying them. The grantee in these deeds, Mr. and Mrs. Berlin, recognized the right of the plaintiff to withdraw the deeds, and the grantee, Mrs. Berlin, herself, knew of and ratified the plaintiff's acts. See, generally in support of this judgment: *Hutcheson v. Bibb, et al.*, 142 Ala. 586, 38 So. 754; *Gibson v. Hammang*, 63 Neb. 349, 88 N. W. 501; *Slack v. Rees*, 66 N. J. Eq. 447, 59 Atl. 466, 69 L. R. A. 393.

On the competency of Mrs. Wait to testify: *Gledhill v. McCoombs*, 110 Me. 341, 86 Atl. 247, 45 L. R. A. (N. S.) 26, Ann. Cas. 1914D, 294.

On undue influence: *Davis v. Parsons*, 165 Cal. 70, 130 Pac. 1055; *Bennett v. Bennett*, 65 Neb. 432, 91 N. W. 409, 96 N. W. 994; *Feit v. Reichert*, 68 Colo. 410, 189 Pac. 854; *Fritz v. Fritz*, 80 N. J. Eq. 56, 83 Atl. 181.

It appears also from the uncontradicted evidence of apparently disinterested witnesses, that at the time of the conveyance this plaintiff was mentally incapable of making a valid deed. Not only was there testimony of laymen to this effect but also of a competent physician. It is certainly very material evidence upon the question of the exercise of undue influence, for if the plaintiff was mentally incompetent to transact business, and the evidence in this case is that she was wholly unacquainted with business affairs, it certainly is a very potential circumstance to con-

sider in connection with undue influence. It would be much easier for such influence to have a controlling effect upon a person thus afflicted.

The findings of fact being supported by the evidence, which was of the probative effect required in such cases, the judgment and decree should be affirmed, and it is so ordered.

MR. CHIEF JUSTICE SCOTT not participating.