# January Term, 1924

## No. 10,539.

### TOST v. SMIES.

Decided March 5, 1923. Rehearing denied February 4, 1924.

Action to set aside deed. Judgment for plaintiff.

*Reversed.*

*On Application for Supersedeas.*

1. DEED—*Mental Capacity of Grantor.* In an action to set aside a deed, on a review of the evidence it is held that the grantor had sufficient mental capacity to execute the deed for the purposes therein expressed.

2. *Execution—Undue Influence.* In an action to set aside a deed, evidence reviewed and held, that there is an absence of testimony to show that the grantee exercised undue or any influence over the grantor in relation to the execution of the deed.

3. *Undue Influence—Burden of Proof.* In an action to set aside a deed on the ground of undue influence, the burden of proving undue influence is upon the party asserting it.

4. *Execution—Undue Influence.* The fact that an aged father lived with a son and his wife for many years and was subject to their kindness, affection and considerate care, is not sufficient to create a presumption of undue influence, or to vitiate a voluntary conveyance to the daughter-in-law.

5. APPEAL AND ERROR—*Issues not Presented.* In an action to set aside a deed, a finding of the trial court that there was no delivery

(435)

of the deed, held erroneous, there being no such issue presented to the court for determination.

*Error to the District Court of Jefferson County, Hon. Samuel W. Johnson, Judge.*

Messrs. SABIN & McGLASHAN, Messrs. HAWLEY & ERICKSON, for plaintiff in error.

Mr. WAYNE C. WILLIAMS, for defendant in error.

*En banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

IN the trial court defendant in error was plaintiff and the plaintiff in error was defendant. The parties will be designated as in the court below.

On July 30, 1920, Erek Gustaf Tost executed a deed to Selma Tost, his daughter-in-law, conveying to. her twenty-six acres of land in Jefferson county, Colorado. He died on the 6th day of May of the following year. After his death the plaintiff, Emilie Smies, his daughter, commenced an action against the defendant, to set aside the deed, and by proper averments in the complaint charged that at the time of its execution Erek Gustaf Tost, who was ninety-three years of age, was sick and sore in mind and body and was wanting in mental capacity to manage and dispose of his property, and was wholly subject to the dominion and control of the defendant, and was induced by her to execute the deed by the exercise of undue influence over his enfeebled mind. The answer fully and absolutely denied the mental incapacity and undue influence charged in the complaint, and asked that the complaint be dismissed.

The case was tried to the court, as one of equitable cognizance, and resulted in a decree finding that Erek Gustaf Tost, at the time of making the deed, was mentally incompetent, and that he was induced to execute the conveyance by undue influence exercised over him by Selma Tost, and

that the deed was never delivered. The defendant brings the case here for review, and both parties ask that the case be finally determined on this application for a supersedeas.

The chief contention of the defendant is that the findings and decree of the court below are not sustained by the evidence. This contention presents three questions for our determination: First, was Erek Gustaf Tost, at the time of making the deed, mentally incompetent? second, was he induced to make the deed because of undue influence exercised over him by the grantee? and, third, was there a delivery of the deed?

There is no substantial conflict in the evidence as to any material fact in the case. The record discloses that Erek Gustaf Tost was ninety-three years of age at the time of his death, and that his wife died in 1887, leaving him two sons, Albert and Carl Frederick, the latter the husband of the defendant, and three daughters, Mrs. Nelson, Mrs. Juchem, and the plaintiff. Mrs. Nelson and Mrs. Juchem were married prior to the death of their mother; Frederick was married in 1889; the plaintiff in 1898. For a time after the death of Mrs. Tost the unmarried children lived with the father on the farm of eighty acres, which he had owned since 1880, and which embraced the lands in controversy. In a few years the children voluntarily dispersed, leaving the father alone on the farm. Shortly thereafter, and almost continuously for twenty-five years prior to his death, Mr. Tost made his home with his son, Carl Frederick, and the defendant, either at their home upon the ranch or at their home in Denver. Mrs. Juchem, who died two months after her father, lived for several years with her husband on his farm one mile distant from the farm of her father. The plaintiff lived in Denver for twenty years immediately prior to the death of her father. Mrs. Nelson lived in Denver for a time, and afterwards in Portland, Oregon. Albert lived in Denver. The evidence is that the members of the Tost family did not live free from discord. Albert

had a disagreement with his brother and his wife, and did not visit his father at their home on the farm or elsewhere more than one-half dozen times in the ten years preceding his death. It seems that Mrs. Juchem and Mrs. Smies were not on speaking terms for several years. The record shows that Mr. Tost resided one winter in the Juchem home with his daughter, until her husband informed him that he had not married the whole Tost family, when the father abruptly cut off further relations with them and never visited them again. He never lived with Mrs. Smies. He first made his home with the defendant and her husband in Denver, and would travel to and from their home to attend his duties on the farm. To avoid this inconvenience he proposed to his son that he make the farm house his home. This being declined, he proposed to deed the son sixteen acres of unimproved land of the farm, if the son would improve it and build a home thereon and make it his permanent residence. The deed was so executed, and the son, in pursuance of the arrangement, constructed a $5,000 modern residence, and the father resided with the son and the defendant on this portion of the farm until March, 1920, when the son and the defendant sold it and the family, including the defendant, moved to Denver. For a number of years prior to his death the grantor did not farm his entire tract of land, but leased the larger portion of it to tenants, reserving a few acres only for his own active operations. He alone negotiated the terms of the leases, made all arrangements with his tenants, and collected all of the rents, as they testify, without the interposition of the defendant or her husband or any one else. The evidence shows that the defendant and her husband and their two sons treated him with uniform kindness and affectionate consideration. It appears that for twenty-five years they provided for him a room for his exclusive use in their home, and that the defendant attentively and affectionately cared for him, laundered and mended his

clothing, nursed him in sickness, and cooked and prepared for him suitable food on all occasions.

The record shows that Mr. Tost made a will in 1894, in which he appointed his son-in-law, Mr. Juchem, executor, but its terms are not disclosed; that in 1905 he made a deed of sixteen acres of his farm to his son, Frederick; that in 1910 he made another will, the exact provisions of which are uncertain; that in 1913 he executed a deed to his son, Albert, for twenty-four acres of the same farm, reserving to himself a life interest therein; that in 1919 he made still another will, but we are not informed as to its provisions; that on July 30, 1920, he executed a deed to his daughter, Mrs. Nelson, for fourteen acres of his farm, and delivered the deed to the lawyer who prepared it, with instructions that the attorney should record it upon his death; that on the same day and at the same time he executed a deed to Selma Tost, the defendant, for the remaining twenty-six acres of his farm, and delivered the deed, surrendering all dominion over it, to the same lawyer, with absolute directions that the deed should be recorded by him upon the death of the grantor. It was this latter deed which was the subject of the action in the court below, and which the court set aside by its decree. It also appears that the custodian of the will dated 1910 was Mr. Randall, who had been a friend of Mr. Tost since 1880. Mr. Randall testified that in July, 1920, Erek Gustaf Tost called on him and demanded the return of the will in his possession, and said he was going to destroy it and give all his property to Selma Tost, giving as his reason for so doing that Mrs. Juchem and Mrs. Smies had done nothing for him, and that the defendant had always been kind and good to him.

Was Erek Gustaf Tost mentally incompetent to execute the deed to Selma Tost in July, 1920?

The grantor was ninety-three years of age, but old age alone will not disqualify a person from making a valid deed. Every person, whatever his age, may freely execute conveyances, if he is in possession of his mental

faculties. There is not a scintilla of evidence in the record tending to show that the grantor was not in full possession of his mental faculties at the time of the execution of the deed. It is true there is evidence of an acute attack of bronchial la grippe, accompanied with some fever, for a few days, but that illness passed quickly and left no traceable consequences. Aside from this single illness he was at all times, before and after the execution of the deed, strong and vigorous physically and mentally, for one of his years. Dr. Busy, the Superintendent of the State Home for Mental Defectives, and former superintendent of the State Insane Asylum at Pueblo, says he saw him on the farm nearly every day for about eight years prior to his death, and that he seemed intelligent and alert mentally; that he was not only normal mentally but above the average for his years; that he visited him socially in his last sickness and he seemed clear as usual mentally; that he was astonished at the physical strength of the old man, when in the last year of his life he felled a cottonwood tree on his farm 2⅛ feet in diameter and cut it into cord wood in a remarkably short time. Dr. Wintermeyer, who knew him twenty-three years and lived near him for ten years, attended him professionally in his last illness and treated him for inflammation of the bladder, said his mental condition was all right, and "he remained of sound and sane mind all during his sickness until the last." It is admitted that he was a great reader, took several Swedish newspapers and read them several hours every day, and kept well posted on current events and what was going on in the world. When on the farm, down to and including the last year of his life, he was very active, and would every day walk over the farm and along the ditches to observe their condition, and when living in the city would take long daily walks, sometimes five miles in extent, through the parks and to and from the resorts. The evidence of the son, grandson, nephew, his tenants, lawyer and neighbors, is all to the effect that he was sound mentally and intellectually alert and bright for one of his advanced

years, and that he was capable of transacting business and of understanding the nature and consequences of all business transactions. They testify to facts which show him not only to possess ordinary mental capacity, but unusual mental capacity, in one of his extreme age. Aside from his extreme age, there is little or nothing in the record upon which to predicate mental incapacity. There is no instance recited in the testimony of any witness illustrating mental weakness, poor memory or forgetfulness, or a want of purposeful conduct or actions at any time. As a matter of fact, it is not disputed that the grantor did conduct and supervise his business on the farm to the close of his life, and no business transaction is shown which was not properly conducted.

We must therefore conclude that the grantor did have sufficient mental capacity to execute the deed for the purposes therein expressed.

What is that undue influence which the law denounces as will vitiate a deed procured by a grantee by its exercise over a grantor?

Justice Brewer says:

"Undue influence must destroy free agency. It is well settled that in order to avoid a will on the ground of undue influence, it must appear that the testator's free agency was destroyed, and that his will was overborne by excessive importunity, imposition or fraud, so that the will does not, in fact, express his wishes as to the disposition of his property, but those of the person exercising the influence." *Mackall v. Mackall,* 135 U. S. 172, 10 Sup. Ct. 707, 34 L. Ed. 84. Commenting on the facts in that case, the learned Justice says: "That the relations between this father and his several children during the score of years preceding his death naturally inclined him towards the one and against the others is evident, and to have been expected. It would have been strange if such a result had not followed; but such partiality towards the one, and influence resulting therefrom, are not only natural, but just

and reasonable, and come far short of presenting the undue influence which the law denounces. Right or wrong, it is to be expected that a parent will favor the child who stands by him, and give to him, rather than the others, his property. To defeat a conveyance under those circumstances, something more than the natural influence springing from such relationship must be shown; imposition, fraud, importunity, duress, or something of that nature, must appear; otherwise that disposition of property which accords with the natural inclinations of the human heart must be sustained."

So in the instant case, it is but reasonable to presume that this father was naturally drawn to this daughter-in-law and his son, with whom he had lived so many years, with the strongest feelings of love and gratitude for the only home afforded him by any of his children, and while the relationship between the father and the son and the daughter-in-law suggest influence, do they prove undue influence in this respect?

We quote further from the language found in the case of *Mackall v. Mackall, supra:* "Influence gained by kindness and affection will not be regarded as 'undue,' if no imposition or fraud be practiced, even though it induce the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and ministered to his wants, if such disposition is voluntarily made. * * * Confidential relations existing between the testator and beneficiary do not alone furnish any presumption of undue influence. * * * Nor does the fact that the testator on his death bed was surrounded by beneficiaries in his will. * * * Nor that the testator, an old and helpless man, made his will in favor of a son who had for years cared for him and attended to his business affairs, his other children having forsaken him. * * | * It would be a great reproach to the law if, in its jealous watchfulness over the freedom of testamentary disposition, it should deprive age and in-

firmity of the kindly ministrations of affection, or of the power of rewarding those who bestow them."

There is an entire absence of testimony in the record of any importunity, imposition, fraud or duress, or anything of that nature, practiced upon the grantor by the grantee, or by any member of the defendant's family; or that the grantee ever exercised any undue influence, or any influence in any degree, over the grantor in relation to the execution of this deed. The burden of proof of undue influence was upon the plaintiff who asserted it. *Snodgrass v. Smith,* 42 Colo. 63, 94 Pac. 312, 15 Ann. Cas. 548.

The evidence shows that Erek Gustaf Tost was independent and self-reliant in his mental characteristics, and quite free from susceptibility. There is not a particle of evidence in the record that he ever sought counsel of his daughter-in-law or son, or ever deferred to their judgment in business or in any matter of consequence. The mere existence of an opportunity to exert undue influence on the grantor creates no presumption against the deed. The fact that the aged father lived with the grantee and her husband for many years, and was the subject of their kindness, affection and considerate care, is not sufficient to create a presumption of undue influence, or to vitiate the voluntary conveyance by him to her. *Hawthorne v. Jenkins,* 182 Ala. 255, 62 So. 505, Ann. Cas. 1915D, 707.

From our examination of the evidence—and we have read the record with the greatest care possible—we are of the opinion that the finding and decree of the court that the deed was the result of undue influence is without foundation in the evidence.

The question as to the delivery of the deed was not raised by the pleadings. The complaint admitted the execution and delivery of the deed by the grantor to the defendant, and only sought to set it aside upon the grounds of undue influence and want of mental capacity of the grantor to dispose of his property. The findings of the court that there was no delivery of the deed, being at variance with the admitted facts in the complaint, cannot be sustained,

for the reason that there was no such issue before the court for its determination.

We are of the opinion, from our consideration of the whole record, that the plaintiff's case is without merit.

MR. JUSTICE DENISON dissents.

*On Petition for Rehearing.*

PER CURIAM.

The modification of the opinion of Department 2 is withdrawn, and the opinion as originally rendered will stand, without modification, as the decision of the court.

The case will therefore be remanded, with instructions to dismiss the complaint at the cost of the plaintiff.