## No. 11,090.

### BOYER *v.* TAIT.

Decided July 6, 1925.

Action to set aside deed. Judgment of dismissal.

### *Affirmed.*

1. Nonsuit—*Equity Case.* While a motion for a nonsuit in an equity case is bad practice, it does not necessarily follow that it is reversible error for a court to entertain and grant such a motion.

2. Cancellation of Instruments—*Fraud—Undue Influence.* In an action to set aside a deed on the ground that it was procured by fraud and undue influence, evidence for plaintiff held insufficient.

3. *Deed—Record—Laches.* The fact that a deed was not placed on record until sometime after the death of the grantor, held

sufficient excuse for delay in bringing an action to set it aside on the ground that it was procured by fraud and undue influence.

4.        *Fraud—Undue Influence—Proof.*  In an action to set aside a deed from a wife to her husband, on the ground that it was procured by fraud and undue influence, plaintiff's showing having failed to measure up to the requirements in such cases, defendant was not required to offer any proof, there being no burden on him, under the circumstances disclosed, to show that no undue influence of deception was used in procuring the deed.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. M. H. KENNEDY, for plaintiff in error.

Mr. FRANK C. WEST, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff Boyer is the son of Mary Tait by her first husband, after whose death she married defendant Felix Tait. During the marriage of the Taits, and in the year 1921, Mrs. Tait made a deed to her husband, the defendant, of several different tracts of real estate, legal record title of which at the time was in her. Two or three years after his mother's death the son, the plaintiff Boyer, as one of the heirs at law of his mother, who died intestate, brought this action to set aside this deed on the ground that it was procured by the defendant as the result of fraud and undue influence which he exercised over the grantor. An accounting was also asked for. At the close of plaintiff's evidence the defendant interposed a motion of nonsuit which was granted, and thereupon the court entered a final judgment dismissing the action. Plaintiff brings error. The only assignment of error is that the court erred in sustaining defendant's motion for judgment of nonsuit on the ground of insuf-

ficiency of the evidence. In his brief the plaintiff presents his objections under three subdivisions which will be observed in our discussion.

1. Plaintiff's first contention is that as a motion for nonsuit in an equity suit is improper, sustaining and granting such motion by the trial court of itself entitles him to a reversal. That a motion for nonsuit is proper only in a law action and that it is bad practice in a suit in equity, is not only conceded by the defendant but is expressly so ruled by us in *Peters v. Peters,* 73 Colo. 271, 276, 215 Pac. 128, 33 A. L. R. 24. It does not necessarily follow, however, as plaintiff argues here, that it is reversible error for a court to entertain and grant such motion. If the plaintiff's whole evidence in this record is insufficient to prove the fraud and undue influence charged in his complaint, it would not be right for this court to reverse the judgment so declaring even though that judgment was rendered in response to a motion for nonsuit. The Peters case cited by the plaintiff condemned as bad practice in an equity action a motion for a nonsuit, and in that case the judgment was reversed but not for a departure from good practice. There the motion of nonsuit was not specific and the trial court's attention was not directed to the real point of objection. The record was incomplete, ambiguous and inaccurate and this court, from the record before it, could not determine therefrom whether the judgment was right or wrong. The existence of a common law marriage relation was the pivotal question in the case and the trial court apparently considered "habit and repute" essential thereto. The record also disclosed that the trial court might have considered "habit and repute" as evidence against the marriage and yet have found the whole evidence insufficient to establish the relationship. Such being the uncertainty of the record, the only proper thing this court could do in that case was to reverse the judgment because in one view which the trial court might have adopted, the judgment was right, and from another standpoint which might have been taken,

the judgment was wrong. We cannot reverse this judgment merely because the trial court followed a bad practice and entertained a motion for nonsuit in an equity action.

2. The important and only question involved upon this review, therefore, is whether the evidence introduced by the plaintiff was sufficient to justify a decree in his favor? The record sufficiently discloses that the fraud charged is based upon, or is included in and a part of, the allegation that defendant possessed, and exercised, an undue influence over his wife in procuring this deed and thereby overcame her free will and to some extent at least destroyed her free agency. We may assume with the plaintiff that if the defendant thus destroyed his wife's free agency, this was fraudulent conduct, but the real and controlling question is whether the charge of undue influence was established by the evidence. We think the trial court was right in holding the evidence insufficient.

The marriage relation of Mr. and Mrs. Tait continued for about twenty years. It is undisputed that it was a harmonious and happy marriage; each one loved, respected, admired and implicitly trusted the other. Mrs. Tait's first husband, Mr. Boyer, father of plaintiff, was an employee of the defendant, who at the time was engaged in the manufacturing business in the state of Illinois. The Taits were married more than a year after the death of Mrs. Tait's first husband. The plaintiff in this case at different times and for several years lived in the family of the Taits. He testifies that the marriage relation was as above stated and that he himself was a welcome member of the family, coming and going as he saw fit. At the time of his mother's death he was at Fort Funston in the state of Kansas and did not know of the death for sometime thereafter. He testifies in his own behalf that he knew that Mr. Tait was administrator of his mother's estate. He charges, in a general way, but there is no specific testimony of any fact in this record which tends to support the charge, that Tait, by deceit and concealment of the truth, left him in

ignorance as to estate matters and he was led to believe that the administration was being properly conducted. The deed which plaintiff's mother gave to the defendant was not placed upon record at the time and not until sometime after her death. This was a sufficient excuse for delay in bringing this action. There is not a particle of direct evidence that the defendant practiced any fraud or exercised undue influence, if such he possessed, in securing this deed. The plaintiff relies chiefly upon the fact that after the death of his father his mother received $5,000 upon an insurance policy which was turned over to the defendant. The evidence is undisputed that of this sum, $2,000 were expended in paying debts of plaintiff's father, and $3,000 soon after the death of the first husband came into the hands of the defendant. The defendant was called as a witness by the plaintiff for cross-examination and testified at great length. He says, and his testimony is not denied, that the sum which came into his hands long before title to this property was taken in his wife's name, was expended in the ordinary expenses of the family. There was an attempt by plaintiff to trace the $3,000 into the real estate included in the deed of Mrs. Tait to the defendant. It was not so traced and there is no evidence that any part of it was a consideration for the property when it was conveyed to Mrs. Tait. The defendant was forced into involuntary bankruptcy in the state of Illinois and after he and his wife removed to Colorado, where they lived for nine or ten years preceding her death, he was engaged in the practice of law. Incidentally he bought and sold real estate. The statute of limitations had not barred some debts which he owed in the East. He bought with his own money and sold real estate from time to time taking title to the property he bought in the name of his wife, and when he sold it she always gave the deeds of conveyance which he presented to her for execution. The particular parcels of property included in the deed which is here attacked, were each subject to a mortgage at the time that the defendant bought them, reductions

of which from time to time have been made. He testifies, and there is no denial, that he furnished the entire consideration for the purchase of these properties at the time the legal title passed to his wife and that before her death he asked her to make a deed thereof to him, which she did, both of them knowing that the consideration therefor had been paid by him and that she held merely the legal title which was taken in her name for their mutual protection. If so, it was only natural and proper that, on his request, the wife should transfer title to him, and, in such cases, this is not unusual. We do not approve of this act of defendant in taking title in the name of his wife of property that he was buying for the purpose of delaying or hindering his creditors. The plaintiff in this case, however, does not sue as a creditor but as an heir at law. If a creditor sees fit to call the defendant to account it may be his privilege.

Assuming, however, as the trial court did, that this property belonged to Mrs. Tait at the time she conveyed it to the defendant, the plaintiff in this action cannot call the defendant to account, unless he has established by clear and satisfactory evidence that the will and free agency of the mother was overcome and destroyed as the result of undue influence over her which the defendant possessed and exercised. There is some conflict in the evidence which was produced by the plaintiff, some of which tends to show, and other evidence which was to the contrary, that Mrs. Tait at the time, having suffered a paralytic stroke, was physically unable and mentally incompetent to make a deed or to transact business. The trial court heard this evidence and found not only that Mrs. Tait was of sound mind and capable of transacting business but that the defendant did not exercise any undue influence or overcome her will in the making of this deed.

The decision of this court in *Tost v. Smies,* 74 Colo. 435, 216 Pac. 545, a case where a deed was sought to be set aside because it was procured by undue influence, is

squarely against the plaintiff in all of his contentions. That case contains a good discussion on the subject of undue influence and is pertinent here. It cites and relies upon *Mackall v. Mackall,* 135 U. S. 167, 172, 10 Sup. Ct. 705, 34 L. Ed. 84. In *Mallow v. Walker,* 115 Iowa, 238, 88 N. W. 452, 91 Am. St. Rep. 158, is also a good discussion of this question and many authorities are cited, under all of which the showing made by the plaintiff here on the issue of undue influence was manifestly insufficient.

3. The plaintiff, however, as a third proposition, says that the evidence which he produced was of such force and character as to justify a decree in his favor unless the defendant, and the burden of doing so was upon him since the relation of husband and wife was a confidential one, shows that the acts of the grantor were free and voluntary and well understood by her. To this is cited Vol. 2 Encyc. of Evidence, p. 832, *et seq.* This authority summarizes the doctrine that where the relation of the parties is such as to make it certain that they do not deal on terms of equality, or where the circumstances show that an unfair advantage was probable, the burden is on the stronger to show that no deception or undue influence was used. In a proper case such principle will be enforced. While the plaintiff was not, under our statute, bound by the testimony that he obtained in cross-examination of the defendant, and was at liberty by admissible evidence to deny and refute adverse testimony that might thus be elicited, the record shows that defendant's testimony brought out on examination by plaintiff himself is unequivocally, that though he did have much influence over his wife and that she trusted him implicitly, he did not exercise undue influence or perpetrate any fraud upon her in procuring this deed. There was no necessity of defendant making any showing after plaintiff closed his case. Plaintiff's own showing did not measure up to the requirements in cases of this sort, and lacked the probative force essential to destroy the deed. Fraud, of course, is not always provable by direct evidence, but there is no

evidence in this record, direct or indirect, as we read it, from which it can be inferred that the defendant was guilty of the charge made against him. The trial court heard all of the testimony, saw the witnesses and had better facilities than we have for determining their credibility. The trial court was justified, if it believed the testimony of the defendant, in finding against the plaintiff. It was also justified in finding against the plaintiff because plaintiff produced no clear or satisfactory evidence that the charge against the defendant which he made was true. Considering the entire record, and following the decision in the Tost Case, we cannot interfere with the findings or judgment below, and they must stand.

Affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.