No. 15,807.

HOUSE *v.* SMITH, ADMINISTRATOR OF THE ESTATE OF SKWLAKIS.
(187 P. [2d] 587)

Decided November 10, 1947. Rehearing denied December 8, 1947.

Messrs. MUNSON & KREAGER, for plaintiff in error.

MR. RAYMOND M. SANDHOUSE, for defendant in error.

In Department, before: MR. CHIEF JUSTICE BURKE, MR. JUSTICE STONE and MR. JUSTICE HAYS.

PER CURIAM.

THE defendant in error, as administrator of the estate of one John Skwlakis, under the authority and direction of the probate court of Logan county, Colorado, instituted this suit in the district court, seeking to set aside and cancel a deed purporting to convey certain real property of his decedent to plaintiff in error on the grounds of lack of consideration, undue influence, fraud, and mental incapacity. The defendant grantee by answer denied these charges. Upon trial of the issues judgment was rendered for plaintiff, and defendant here seeks reversal upon the ground that the evidence was insufficient to support the findings of fact and judgment of the trial court.

In view of the contentions advanced, it will be necessary to give a brief outline of the testimony as presented to the court.

The defendant, Malinda Grace House, was called by the plaintiff as stated, "for cross-examination under the statute."

The defendant testified that the decedent was of Greek extraction, seventy-eight years of age, and had no relatives or heirs in this country; that he could not read or

write the English language; that he signed his name by making his mark and spoke the English language in a manner which made it difficult for her to understand him; that defendant conducted a hotel; that she first met decedent about November 6, 1944, at which time he stayed two months at her hotel; that decedent afterwards went to the hospital of Mayo Brothers, and, later on, was in the hospital at Sterling; that he returned to her hotel on June 20, 1945; that he was ill and hard to take care of by reason of his illness; that she gave him a room for which she made a charge of six dollars per week, and that in addition thereto, she furnished him some meals and some of the time carried the meals to him; that she thought he was an old-age pensioner and did not know that he had any property; that she first learned that he had some property about the first of August, 1945; that at that time he proposed to her that he convey his property, both real and personal, to her, to cover what he owed her on account, and to pay her for taking care of him the remainder of his life, and providing him with a decent burial. That, thereupon, she had a notary public get the legal description of his real property and prepare a deed for the property, a bill of sale for his personal property, and an agreement whereby she would agree to take care of the decedent during his life, to pay his debts and to give him a decent funeral. It later developed that the instrument sought to be drawn as a bill of sale was more in the nature of a power of attorney. Such a deed was drawn and on August 10, 1945, in the late afternoon, the decedent attached his mark to the deed, and the same was witnessed by two witnesses. An agreement was signed by the defendant, which provided that she would take care of the decedent during his lifetime and would give him a decent burial and, "for this service and services already rendered John Skwlakis, he is deeding all his property and all his money, stock, bonds and securities in the bank or elsewhere and all rents due now and

hereafter." She further states that decedent told her that doctors and hospitals did him no good, and he did not want to go to a hospital any more; that some time before this transaction, she had refused to permit some acquaintances of the decedent to visit with him for the reason that the decedent had accused one of these people of stealing some money from him. That on August 13, 1945, decedent was taken severely ill, and she refused to have him removed to a hospital until he was removed by order of the sheriff.

A physician testified that he was directed by the sheriff of Logan county to investigate, and saw the decedent on the afternoon of August 14, 1945; that he found decedent sitting in a chair; that he was unable to lie down; that his feet and legs were swollen; that he was very sick; that he could not get very much discussion about the condition of the decedent from the man himself; that the decedent was afflicted with chronic Bright's disease; that he ordered decedent to a hospital. The physician further testified that on August 14, 1945, the decedent could not give coordinated answers, and gave his opinion, based upon the revelations of an autopsy that the decedent did not have full control of his mental faculties on August 10, 1945, and before that.

The administrator testified that he had known decedent since 1924; that he had been the business advisor of the decedent; that the property of the decedent held by the bank aggregated about $13,000; that defendant had presented to him, as an officer of the bank, a paper referred to as a power of attorney, and had asked for decedent's property; that this demand by the defendant prompted inquiry and his subsequent action.

An ambulance driver testified that he called on August 14, 1945, to take the decedent to the hospital, and defendant refused to permit decedent to be moved until the sheriff intervened.

A witness testified that some time prior to the death of the decedent, the decedent wanted to talk to someone

who spoke the Greek language; that she attempted to see the decedent at the hotel and was refused admittance by the defendant; two other witnesses testified that they had called at the hotel to see the decedent and were refused admittance by the defendant.

The two persons who signed the instruments as witnesses testified to lengthy acquaintance with decedent and to conversations with decedent to the effect that he wanted to give his property to defendant and did not want to go to a hospital, and both gave their opinion that the decedent was competent at the time he affixed his mark to the instruments, both stating "he was as capable as he ever was." A practical nurse gave her opinion that the decedent was competent mentally. A tenant of the decedent testified that the decedent had offered to deed the property in question to him if he would take care of the decedent during his lifetime. The scrivener testified that he got the legal description of the property from the public records, and was instructed by the defendant as to what the instruments should contain; gave his opinion that decedent was competent mentally when the instruments were executed and did not testify that he had at any time discussed with decedent the import of the instruments. A railroad fireman testified to long acquaintance with the decedent and that decedent had indicated to him before the transaction in question that he wanted to give his property to defendant for her care of him and had been told after the transaction that he had done so.

The court found that the defendant's claim of a good and valuable consideration at most consisted of six weeks' care at her hotel, an obligation to provide a decent burial, and $4.05 hospital bill, and found that this consideration was grossly inadequate.

The court found that the circumstances surrounding the transaction must of a certainty shock the conscience of all persons of reasonable and mature intelligence and experience.

The court found that the evidence was sufficient to establish undue influence exercised by the defendant upon the decedent, and that the inadequacy of consideration together with all of the circumstances which surrounded the transaction was sufficient to establish and did establish fraud.

 It is the position of the defendant, in view of the fact that defendant testified that the transaction was entirely regular, that the decedent was entirely competent; and the transaction exactly as the decedent desired, that the court was bound by that testimony, particularly since the testimony of defendant was procured by plaintiff. The fact that the defendant did not testify to the exercise by her of any undue influence, and her statement that the transaction was legitimate and supported by an adequate consideration, does not mean that her testimony disclosed such facts. Nor does it follow that because a witness is not directly contradicted by another witness that the testimony is undisputed. The credulity of the court need not necessarily correspond with the positiveness with which an interested witness testifies. The facts as to the inception of the alleged contract depended entirely upon the statement of the defendant, and the inherent improbability of her testimony in the mind of the court might and undoubtedly did deny to it all credence. The testimony of the defendant and the inferences properly deducible therefrom demonstrates that at the time of the transaction in question the decedent was old, and ill; could neither read nor write the English language, and had such difficulty in speaking the English language that he was hard for the defendant to understand, and she did not talk to him much; that he had no one to explain in his own language the import of the instruments he was procured to attach his mark to, and was accorded no opportunity in which to consult competent and friendly counsel to advise him as to what proceedings were necessary in order to carry out the intention which he might have formed, if indeed, he had

formed any; and that the defendant and her scrivener, neither of whom were under any of these handicaps, misconceived the legal effect of one of these instruments.

It is not strange that the court should not believe the testimony of the defendant, and the contention of the appellant that the court was concluded thereby is not tenable.

The defendant complains that the court made a finding that "during the last two weeks of his (the decedent's) life, his friends were not permitted to see him," and says this is directly contrary to the record. In another paragraph the court found that some of his friends had not been permitted to see him. While the exclusion of the decedent's friends was apparently limited to those whose names indicated they might be able to speak the decedent's language, it is obvious that the court had in mind the facts as set forth in the record.

Defendant cites *Berlin v. Wait,* 71 Colo. 533, 208 Pac. 482; *Tost v. Smies,* 74 Colo. 435, 216 Pac. 545; and *Boyer v. Tait,* 78 Colo. 36, 238 Pac. 59; as evidencing the rule that the burden of proof in establishing fraud and undue influence is upon him who asserts it and that it must be established by clear and satisfactory evidence. However, this rule must be construed in conjunction with the other rule, that fraud, in some situations, may be presumed from the relationship, or from the circumstances and condition of the parties contracting, to prevent one taking surreptitious advantage of the weakness or necessity of another, and that gross inadequacy of consideration will call for explanation and shift the burden to the party seeking to enforce an instrument and require him to show affirmatively that the price was the result of the deliberate and intentional act of the parties. *Dittbrenner v. Myerson,* 114 Colo. 448, 167 P. (2d) 15. So in *Berlin v. Wait, supra,* after stating that to justify the cancelling of a deed the proof that it was procured by improper motives must be definite and clear, we further said: "Considering the confidential re-

lation of the plaintiff and the defendant, under the authorities it was incumbent upon the defendant to show the fairness of his conduct in his dealings with her."

In reviewing cases of this character, the appellate court considers "the evidence in the light most favorable to the successful party at the trial below and therefrom draw all inferences fairly deducible." *Freeman v. Boyer Bros.,* 82 Colo. 509, 261 Pac. 864.

"It is a fundamental rule, that the conclusions of a trial court upon conflicting evidence upon a question of fact, cannot be overthrown upon review in this court, unless the conclusion is so manifestly against the weight of evidence as to show that the lower court either misconceived its force and effect, or that its conclusion was influenced by passion and prejudice." *Henry v. McNealey,* 24 Colo. 456, 50 Pac. 37.

The findings of fact entered by the court are amply supported by the record; its conclusions of law are correct, and the judgment will be affirmed.