## No. 17,063.

BIVENS v. VAN MATRE.

(270 P. [2d] 761)

Decided May 17, 1954.

Messrs. WALDO & WALDO, for plaintiff in error.

Mr. HAROLD C. CREAGER, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

We will refer to the parties by name or as they appeared in the trial court, where plaintiff in error was plaintiff and defendant in error was defendant.

Bivens brought this action in equity to set aside his deed to Van Matre, alleging fraud, undue influence, mental incapacity and inadequate consideration as the basis for the relief demanded. Van Matre admitted that Bivens conveyed certain real property to him, but denied the other allegations of Bivens' complaint. Trial was to the court. The issues joined were resolved in favor of defendant, and plaintiff's complaint was dismissed. Bivens brings the cause here on writ of error.

Plaintiff lived on his 160 acre homestead in Weld county, Colorado. Van Matre and an associate, while engaged in leasing oil rights in Weld county, learned that no lease of mineral rights in the Bivens land had been recorded. On October 18, 1951 they went to see plaintiff, seeking a lease of these mineral rights. They then learned that he had leased his mineral rights (the evidence shows this was in March, 1951) and Van Matre offered to buy a part of Bivens' landowner's royalty rights. Bivens would not consider selling his royalty interests separately, but there is evidence that he suggested they buy the entire homestead at a price of ten dollars per acre, Bivens to reserve a life interest in one-half of his oil and gas royalty under the existing lease he had with other parties.

This offer was accepted, and Van Matre then gave Bivens a check for five hundred dollars to bind the deal. On the next day the parties went to the office of Judge Robert G. Smith in Greeley, Colorado, who reviewed the transaction with Bivens; drew the necessary papers, which Bivens executed, and the balance of the $1,600 purchase price was paid by Van Matre. On February 9, 1952 the instant action was commenced.

Bivens' testimony was to the effect that on October 18, 1951 Van Matre and a Mr. Look came to his homestead "to buy in on his oil claim." Bivens said it was not

for sale, but admitted that he told them"I will sell you the claim for about ten dollars an acre I suppose." The next day all parties went to the office of Judge Robert G. Smith in Greeley, Colorado, and the latter prepared the necessary papers for a transfer of the property. Bivens said that on the 18th and 19th of October, 1951 he felt "all right," but on the 20th he did not feel so well, and "that's when I had that stroke."

Referring to the dates of October 18 and 19, 1951, Bivens on direct examination, testified: "Q. You could walk around and do everything all right, could you? A. Why yes, I could. I was as healthy as a ground hog."

The following also appears from his cross-examination: "Q. Now you told Mr. Waldo that you felt all right the day Mr. Van Matre and Mr. Look were out there to talk to you, did you not? A. Yes, sir. Sure I felt all right. Q. Did you feel all right the next day also. A. Yes, that was the day we came down to Greeley with them, and Judge Smith made out the papers."

Mr. Look testified as follows: "We asked Mr. Bivens if he had any selection of attorney, and he said Yes, he had one, Judge Smith, and I contacted the next morning, Mr. Smith, at Mr. Van Matre's suggestion and the papers were prepared by Mr. Smith, and the deed was executed by Mr. Bivens in his presence, and in the presence of the Notary in his office." This evidence stands uncontroverted in the record.

When Van Matre and his associate were with Bivens on October 18, 1951 he stated that he could not locate his abstract of title and the oil and gas lease he had executed in March, 1951. After they departed, Bivens said he searched for these papers and found them, delivering them to Van Matre the following morning. There is evidence that Bivens was happy because he had located these documents.

Three medical witnesses testified concerning Bivens' mental condition, all based on examinations of him made after October 20, 1951. Two of them said Bivens

suffered from hardening of the arteries, was weak, mentally confused, and that his stroke accentuated his condition. The third physician testified that when he examined Bivens on two occasions in June, 1952, his talk was coherent; that Bivens was mentally competent, and his memory apparently good. Lay witnesses testified, some stating that Bivens appeared to be in failing health; did not do much work; was forgetful, and was careless with his money. Judge Smith, who drafted the sale papers, testified that Bivens on October 19, 1951 talked intelligently; knew the description of his property, and said he wanted one-half of the royalty.

When interrogated regarding the deed he signed Bivens testified: "Q. Did you know what the effect of that paper was? A. Why, yes, I knew Judge Smith wrote it out and read it. I knew what it was."

Defendant testified that on the occasion when plaintiff gave his deposition in this case, Mr. Bivens said to him: "Mr. Van Matre, don't feel mad at me, that there is too many other people involved in this, that it is not my doings." This was not denied.

In *Hanks v. McNeil Coal Corporation,* 114 Colo. 578, 168 P. (2d) 256, we quoted with approval from 1 Black on Recission and Cancellation, as follows: "Hence it is a general rule that if a party enters into a contract or any other legal transaction with sufficient mental capacity to understand it, and not under the influence of fraud, coercion or imposition, the courts will not relieve him of the consequences of his act on the sole ground that the bargain is, as to him, improvident, rash, foolish, or oppressive."

Counsel for plaintiff stress the fact that Bivens was 82 years of age. "Old age alone will not disqualify a person from making a valid deed." *Tost v. Smies,* 74 Colo. 435-439, 216 Pac. 545.

One of Bivens' witnesses testified that he and his brother leased land in this general vicinity for thirty-two dollars per year for 160 acres, and that a few years

prior to 1951 they paid $8 per acre for lands in this vicinity. He also testified that he and his brother purchased a quarter section adjoining the Bivens land for something less than one thousand dollars.

Plaintiff's testimony was as follows: "Q. Do you know how much was paid for any of that pasture land around there? A. Well, just that Don bought a place right on the creek, and he paid Seven Dollars an acre for it, and then they bought a quarter section, and they paid Ten Dollars for it, and then there is the Shaughnessy place that brought Eight Dollars an acre." He then said these transactions took place before his deal with Van Matre, "it could have been two years, but not over that."

Bivens testified that he had offers of various amounts for his land, running over a period of years. The lowest was $4 per acre and he said he held the land at $20 per acre. He said he had heard of sales of land in the vicinity at $7 or $8 per acre, and that he received no consideration for the oil and gas lease he had given the Wycolo Company in March, 1951. Bivens was not growing crops on the land, neither had he leased it to others for that purpose, or for the grazing of cattle.

Judge Smith testified that in June or July, 1951 some land in the vicinity of Bivens' property sold for $15 per acre; that another tract sold for ten dollars per acre in March, 1951, and that still another tract was sold in May, 1951 for ten dollars per acre. He testified that he fully explained the entire transaction to Bivens at least twice, and that Bivens understood it, agreed to it, signed the conveyance and accepted the consideration.

The trial judge in his evaluation of all the evidence, said: "Considering this largely opinion evidence, together with the character of plaintiff's own testimony on the trial, and his mental alertness during questioning, we do not find that clear and convincing evidence required for the setting aside a duly executed deed. Plaintiff understood the subject matter involved, appreciated the nature, character and effect of his acts. * * * We find

no sufficient evidence of fraud, of undue influence, or of mental incompetency. As to inadequacy of consideration, several witnesses testified, but again the evidence of value on October 18, 1951, is conflicting, the preponderance being that $10 to $20 per acre under the circumstances was reasonable. The $10 per acre was not so unreasonable and inadequate as to establish fraud."

The real question before us is whether there is sufficient evidence of fraud, undue influence, mental incapacity or inadequate consideration in this record to warrant the setting aside of this deed.

All the objections and arguments of counsel for Bivens are directed to the facts which the trial court found or failed to find, as the case may be, from the evidence. Their sole contention is that the trial court improperly weighed the evidence.

Counsel for Bivens request us to review the testimony on appeal "in much the same fashion as would be done on a trial de novo."

It would be idle for us to cite the many cases in which we have uniformly held that it is the province of the trial court, when the cause is tried without a jury, to evaluate the evidence and determine its character and probative value. Much that does not appear from the cold type on the printed page before us, does present itself before the trier of the facts.

The trial judge had all the facts and circumstances pertaining to the entire transaction presented to him; he observed for himself the character of the witnesses; the consistency or inconsistency of their testimony, as well as their manner and demeanor on the witness stand. The finding in favor of defendant is not manifestly against the weight of the evidence. It does not appear that the trial court acted upon an incorrect conception of the law.

We said in *Davis v. Pursel,* 55 Colo. 287, 134 Pac. 107, "In this character of cases an appellate tribunal may examine the evidence to ascertain if the trial court had the right conception of the law, if its conclusions are

supported by the evidence, or are fair deductions therefrom; and, if upon the whole case, it is reasonably certain that the decree is palpably unwarranted, though it may be slightly supported by the evidence, it should nevertheless be set aside. On the other hand, however, if the decree is supported by the evidence, under a proper conception of the law, it should not be disturbed, though the reviewing tribunal might have, if passing upon the matter in the first instance, reached a different conclusion."

Adhering to the rule that the trial judge must act upon the convictions of his own judgment and conscience in cases of this kind, and that it is his province to pass upon the weight of the evidence, the credibility of the witnesses and to find the facts, we are not warranted in setting aside his findings or disturbing the judgment.

The judgment is affirmed.

MR. JUSTICE BRADFIELD not participating.