## No. 14,834.

### GARDNER *v.* GLASNAPP.
(115 P. [2d] 646)

Decided June 23, 1941.   Rehearing denied July 21, 1941.

Mr. O. A. JOHNSON, Mr. O. W. WEBER, for plaintiff in error.

Mr. P. D. NELSON, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

DEFENDANT in error, plaintiff in the district court, brought an action in ejectment against plaintiff in error, defendant there, to recover possession of a residence

property in the town of Longmont and damages for its detention. Trial was to the court. Plaintiff prevailed in the action and judgment was entered by the court awarding her possession, and damages in the sum of $168. To reverse that judgment a writ of error is prosecuted.

The plaintiff, Carrie Glasnapp, was a daughter and heir at law of Ellen Summers, deceased, as was also defendant. During her lifetime, and approximately three years before her death, deceased conveyed the property involved to Robert Lewis Summers, whose father was William Summers, the latter being a son of deceased, with the understanding that she should occupy it during her lifetime, which privilege was in fact accorded to her. The two daughters and son are all of deceased's heirs at law. The deed to Robert Lewis Summers was given in consideration of his signing a note for approximately $700 payable to the Home Owners Loan Corporation, payment of which note was secured by a mortgage on the property in suit. At the time the mortgage was given it was on a basis of approximately eighty per cent of the appraised value. The testimony was to the effect that the present value of the property is higher, being from $1,200 to $1,500, and that the rental value is now from $12 to $15 per month.

Robert Lewis Summers, after the death of his grandmother, conveyed his equity in the property to his aunt, the plaintiff, the consideration for the deed being $25. Plaintiff relies on her title deraigned through deceased's deed to her grandson and the deed from the grandson to herself. Defendant challenges the validity of that title on the alleged grounds of the mental incompetency of Ellen Summers at the time she made the deed to her grandson, undue influence exercised by William Summers, her son, inducing her to make the conveyance, no consideration, and no delivery of the deed. Defendant contends also that the deed was not given as an absolute conveyance, but as a mortgage to secure the

grandson against liability, or having to make the payments on the note to the Home Owners Loan Corporation.

We shall assume that these questions are all raised by the assignments of error. The errors assigned, also go to the admission and exclusion of testimony as to various matters, but upon examination of the record we find these latter to be without foundation.

■ As is usual in such family controversies, much of the evidence is in sharp conflict. There is testimony which, if believed, justifies the conclusion that Ellen Summers, while of advanced age, was of clear mind and was herself the mover in sending for a scrivener to prepare the deed to her grandson pursuant to her understanding with him a few months previously when he signed the note with her. It is equally true that later, and after she had executed the deed, Ellen Summers told the case worker from the welfare department that she had made no conveyance of the property; that she advised her daughter, the defendant, "always to keep a roof over her head"; that she continued to pay the taxes and to make the payments on the Home Owners Loan indebtedness out of her old age pension allowance, all of which, together with other matters that might be mentioned, tend to show that deceased, at least subsequently, did not know that she had conveyed her property, and continued to deal with it as her own. The record is replete with evidence that shows that she, her son, and other members of the family were in straitened circumstances financially. Her statement to the scrivener that she would have the deed recorded later, that a little time would not matter, is consistent with non-delivery of the deed at that time, and consistent with delivery and a recognition of the fact that she had not paid the scrivener for his services, for the required revenue stamp, and the recording fee, and that the recording might await such payments. There is no contention that the grandson was under any legal obliga-

285

tion to sign the note to enable his grandmother to make payment of a pre-existing mortgage and thus prevent its foreclosure. If he did sign the note and deceased understood that he made it a condition of his doing so that she deed him the equity as a consideration for his signing and saving the place for her, this of course was consideration.

██ We mention the foregoing matters not as a complete resumé of all the evidence, but merely as illustrative of its conflicting character. What our own impressions and conclusions from the evidence may be are not material. The weighing of the evidence was the exclusive function of the trial judge who sat as a trier of the facts. He heard the witnesses testify, observed their demeanor while testifying, and was in a better position than are we to judge of the truth or falsity of their testimony. Having made his findings in favor of plaintiff and against defendant on conflicting evidence, and there being competent evidence to sustain them, under principles of law too well-settled to require citation of authorities we shall not set aside the judgment entered thereon.

Judgment affirmed.

MR. JUSTICE KNOUS, MR. JUSTICE OTTO BOCK, and MR. JUSTICE BURKE concur.