## No. 15,230.

Anderson et al. *v.* Lindgren, Administrator

(157 P. [2d] 687)

Decided March 26, 1945.   Rehearing denied April 16, 1945.

Messrs. REDMOND & DREFKE, for plaintiffs in error.

Mr. SHERMAN E. WALROD, Mr. RAYMOND M. SAND-HOUSE, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

PLAINTIFFS in error will hereinafter be called plaintiffs and defendant in error will be referred to as defendant.

Plaintiffs as heirs at law of Hadda Lindgren brought this action in equity for a decree cancelling and annulling a certain deed and lease from Hadda Lindgren to Dewey C. Lindgren, their brother, executed and recorded on September 22, 1938. Hadda Lindgren died on

November 3, 1939, at the age of seventy-five years. Dewey C. Lindgren died while the action was pending, and defendant as administratrix of his estate was substituted.

The trial consumed three days; more than thirty witnesses were sworn and testified; briefs were filed with the trial court. The trial court entered its findings and decree, resulting in a judgment of dismissal. To review the judgment plaintiffs sue out this writ of error.

There are nine specifications of points upon which plaintiffs rely for a reversal, and these may be summarized as follows: 1. A fiduciary relation existed between Hadda Lindgren and her son, and the burden was, therefore, upon him to establish that the utmost good faith was exercised in connection with the deed and lease; 2. the deed and lease were executed as a result of undue influence; 3. Hadda Lindgren lacked sufficient mental capacity to execute the deed and lease; 4. there was no valid consideration.

In the complaint plaintiffs alleged that their aged mother had resided in the home of Dewey C. Lindgren, as a member of his family, for many years prior to September 22, 1938, and a confidential relation existed between Dewey C. Lindgren and his mother; that the mother had become infirm in mind and her mental faculties impaired so that she was susceptible to influence, and that on September 22, 1938, she was incapable of executing any conveyance and incapable of taking care of her business matters; that Dewey C. Lindgren was her personal and business manager and confidential agent and as such directed and controlled his mother and her business affairs, and had his mother under his complete subjection and domination; that as a result of the confidential relation existing between Dewey C. Lindgren and his mother, he wilfully, wrongfully, fraudulently and unlawfully persuaded and caused her to execute the deed and lease in controversy. The deed

conveyed one hundred and sixty acres of land out of a total of four hundred and eighty acres belonging to Hadda Lindgren. The home occupied by Dewey C. Lindgren, his family, and Hadda Lindgren, and other farm improvements, were located on the land conveyed.

The answer denied all allegations of the complaint charging improper conduct on the part of Dewey C. Lindgren, and alleged that the conveyance of the one hundred and sixty acres on September 22, 1938, as well as the lease, was for a valuable consideration, and that the deed and lease were in all respects valid.

The trial court had the advantage of seeing the witnesses, observing their demeanor, and hearing their testimony, and at the conclusion of the trial and after a consideration of the briefs filed by the respective parties, made elaborate and detailed findings of fact upon which the decree was based, and upon which judgment was entered.

In the findings of fact the trial court determined that there was a consideration for the conveyance from Hadda Lindgren to Dewey C. Lindgren on September 22, 1938, and that consideration was three thousand dollars, and determined that this was adequate consideration for the conveyance under the circumstances. The court further found that the "overwhelming weight" of the evidence disclosed that Hadda Lindgren, at the time of executing the conveyance, was perfectly sound mentally and was not in any respect afflicted with senile dementia, and that she was strong willed and accustomed to the management of her own affairs, and "that she was not dominated by her son" in the transaction in question. The trial court further found that there was no evidence upon which the court could "even speculate" that Hadda Lindgren was under the influence of Dewey C. Lindgren at the time the deed and lease were made, executed and delivered.

We have read and carefully considered the rather voluminous record in this case and shall discuss the

summarized specifications of points in the order mentioned hereinbefore.

1. It may be conceded that the son occupied a fiduciary relation to this mother, but this fact is not fatal to the validity of the deed and lease. It is only the improper use of the fiduciary relation that is to be condemned. If the son had exercised the advantage acquired by reason of his fiduciary relation to cause his mother to execute a deed and lease against her free will or desire, and this had been established, it would vitiate the deed. However, there is no such evidence here. The mother selected her attorney to draft the deed and lease, and the fact that her son accompanied her to her attorney's office is not such a circumstance as to excite any unusual interest or adverse comment. The mother had resided in her son's family for a great many years. She had reposed confidence in his business ability and integrity. The deed and lease may have been the result of the mother's desire to, in a measure, repay the son for his attention and filial regard. This is consonant with the facts disclosed by the evidence.

Plaintiffs contend that where a fiduciary relation exists, the burden rests upon the fiduciary to show that no advantage was taken. This is correct; nevertheless the record is replete with evidence that justifies the conclusion that the deed and lease were the result of the mother's thoughts and reflections, and their execution was not at all inspired by her son, and the confidence growing out of the filial relation did not play any part in connection therewith. There is not a scintilla of evidence in the record that justifies an assumption that the son abused his mother's confidence.

2. It would be unnatural to assume that a mother who had resided with her son, in his family, and as a member thereof, for a great many years did not have some real affection and confidence in him, particularly in view of the fact that, so far as the record reveals, the mother had sufficient property of her own to live in

comfort elsewhere. The record shows that the plaintiffs, for a number of years, at least, resided in the same general neighborhood as did their mother and brother and made no effort to remove her from what they now assert was the unreasonable domination and control of her son. There is no doubt that the mother was influenced by her affection and confidence in her son and by her gratitude to him and his family for years of devotion and service, for which little was ever paid. Hatred and indifference is not necessary to sustain a deed from mother to son nor is gratitude or affection from the mother to the son fatal to it. The only undue influence which will void a deed is an unlawful or fraudulent influence which controls the will of the grantor. The natural influence of affection of a parent for a child is neither fraudulent nor illegal, and courts will not set aside a deed because it is induced by such an influence unless it should appear from the evidence that this influence was purposely and improperly exercised to confuse the judgment and to overcome the free will of the grantor. No such use of influence can be found in this record. The undue influence which is sufficient to set aside a conveyance upon a proper and timely application therefor exists where there is a forceful assumption of a dominant influence of the grantor. In order to set aside a conveyance, the undue influence must be such as to overcome the will of the grantor to the extent that he is prevented from voluntary action and is deprived of free agency.

3. The record discloses that Hadda Lindgren was seventy-five years of age, and some of the witnesses indicate that her mind was, perhaps, less active and powerful than in the early years of her life. The question of her mental capacity, however, is not whether the powers of her mind were impaired or whether she possessed the ordinary capacity to do business, but the test is whether she had any capacity to understand what she was doing and to determine intelligently whether

she would do it. To require any other capacity than we have indicated would take way from feeble and aged parents that power over their accumulations which they have conserved as their best safeguard against misfortune and would undoubtedly result in endless uncertainty, difficulty and litigation. Our consideration of the record convinces us that Hadda Lindgren understood perfectly what she was doing when she made the deed and lease and that she possessed the ability to decide, and decide intelligently, whether she would execute them.

■ 4. The question of consideration has been presented, and, while there is evidence in the record which would justify a finding that the deed conveyed land and improvements of a reasonable value of eight thousand dollars, there likewise appears in the record competent evidence which would support a finding that the land and improvements were reasonably worth only four thousand dollars. Under the circumstances of this case, the trial court was justified in determining that three thousand dollars was an adequate consideration for the conveyance.

The court, in its findings, definitely stated that our decision in *Tost v. Smies,* 74 Colo. 435, 216 Pac. 545, was applicable and controlling, and in this we think it was correct. The following references and citations have been helpful to us in our determination: 16 Am. Jur., p. 660, §§392, 393; *Little v. Little,* 23 Colo. App. 518, 520, 130 Pac. 1022; *Berlin v. Wait,* 71 Colo. 533, 539, 208 Pac. 482; *Gardner v. Glasnapp,* 108 Colo. 282, 115 P. (2d) 646; *Sawyer v. White,* 122 Fed. 223, 225; *Mackall v. Mackall,* 135 U.S. 167, 10 Sup. Ct. 705, 34 L. Ed. 84; *Towson v. Moore,* 173 U.S. 17, 19 Sup. Ct. 332, 43 L. Ed. 597; *Irwin v. Simmons,* 140 F. (2d) 558.

■ There is ample evidence in the record to support the findings, judgment and decree of the district court, and where this exists we recognize that under oft re-

peated decisions of this court our duty is to affirm the judgment. The judgment of the district court is accordingly affirmed.