The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 4, 2022

**2022COA89**

**No. 20CA1125, *In re Estate of Chavez* — Crimes — Civil Theft — Rights in Stolen Property — Treble Damages**

As a matter of first impression, a division of the court of appeals concludes that in awarding treble damages under section 18-4-405, C.R.S. 2021, a trial court must treble the actual damages awarded by the jury before offsetting any amounts already repaid. The civil theft judgment is reversed and remanded for the trial court to recalculate treble damages. The judgment is affirmed in all other respects.

Court of Appeals No. 20CA1125
Douglas County District Court No. 18PR30128
Honorable Michael J. Spear, Judge

In re the Estate of Marie M. Chavez, deceased.

Gilbert M. Chavez,

Appellant and Cross-Appellee,

v.

Teresa Chavez-Krumland, as Personal Representative of the Estate of Marie M. Chavez,

Appellee and Cross-Appellant.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE FREYRE
Fox and Gomez, JJ., concur

Announced August 4, 2022

Anne Whalen Gill, L.L.C., Anne Whalen Gill, Castle Rock, Colorado; Gill & Ledbetter, LLP, H.J. "Jay" Ledbetter, Castle Rock, Colorado, for Appellant and Cross-Appellee

Wade Ash Woods Hill & Farley, P.C., Jody J. Pilmer, Zachary D. Schlichting, Denver, Colorado, for Appellee and Cross-Appellant

¶ 1     In this probate matter, Gilbert M. Chavez appeals the breach

of fiduciary duty, unjust enrichment, and civil theft orders entered

in favor of Teresa Chavez-Krumland, conservator to Marie M.

Chavez and personal representative to Marie's[1] estate (collectively,

the Estate), after a jury trial.[2]  The Estate cross-appeals the court's

ruling denying treble damages on the civil theft claim.  This claim

presents an issue of first impression — whether a trial court may

offset a defendant's repayment against a jury's damages award

before determining treble damages.  We conclude that it may not

and that a court must first treble the jury's damages awarded for

civil theft and then deduct any amounts already repaid.

Accordingly, we affirm in part, reverse in part, and remand for

further proceedings.

## I.     Background

¶ 2     After her husband died, Marie lived by herself on their ten-

acre ranch (the Ranch).  At various times over the years, her

---

[1] Because multiple parties share the same last name, we use first
names to distinguish them and mean no disrespect to the parties.
[2] During the course of this appeal, Marie died and Teresa was
appointed personal representative of Marie's estate.  Teresa was
then substituted for Marie for purposes of this appeal.

children, including her son Gilbert, and grandchildren temporarily lived on the Ranch with her. As part of the distribution of her husband's estate, Marie received monthly pension payments from her husband's family-run auto body shop. Marie used this money to support herself and also to help her children.

¶ 3    Beginning in March 2005, Marie executed the following powers of attorney designating Gilbert as her agent:

- a March 2005 general power of attorney;

- an April 2007 special power of attorney designating Gilbert as her agent in fact for her bank account;

- a July 2008 general durable power of attorney and medical durable power of attorney; and

- a February 2014 power of attorney for her bank account.

¶ 4    In September 2014, Marie, with Gilbert's help, hired an attorney to complete her estate planning. Marie executed a will that, as relevant here, devised the Ranch to Gilbert and his wife. Marie also executed a general durable power of attorney and a medical durable power of attorney designating Gilbert as her agent.

¶ 5    In late 2015, Marie's physician told the family that she needed twenty-four-hour care due to her declining health following a series

of falls. Based on this recommendation, the family agreed to place Marie in a rehabilitation and retirement facility that offered the recommended care.

¶ 6 As the person acting with power of attorney, Gilbert managed Marie's finances and maintained the Ranch. Over time, Gilbert became increasingly concerned about Marie's financial stability and his sisters' taking advantage of Marie's generosity. He expressed these concerns to his sister Teresa and to Marie's estate attorney.

¶ 7 On July 29, 2016, Gilbert drove Marie to her bank, where she executed a quitclaim deed transferring the Ranch to Gilbert and his wife without consideration. At Marie's request, Gilbert drafted and recorded the deed, and he kept the transfer a secret from the rest of the family. Gilbert then changed all the locks at the Ranch and donated most of Marie's personal property inside the house. But he continued to use Marie's money to maintain the Ranch.

¶ 8 Gilbert ultimately told Marie's estate attorney about the quitclaim deed in May 2017. In July 2017, he changed his status on Marie's bank account from agent to joint owner. All of Marie's bank statements were mailed to the Ranch, where Gilbert and his wife were then living.

¶ 9     In November 2017, Teresa learned about the deed transferring the Ranch to Gilbert. She confronted him, and he assured her that he was following Marie's wishes. Gilbert then reached out to Marie's estate attorney in December 2017 with concerns about Marie's mental capacity and memory and family members pressuring her.

¶ 10    Around the same time, Teresa noticed that Marie was depressed and uncomfortable. When she asked what was happening, Marie said that Gilbert was not listening to her. Marie had asked to return home to the Ranch, but Gilbert had refused. In January 2018, Marie met with the estate attorney to discuss her request to return to the Ranch. Marie told her attorney that she wanted the Ranch back. She said she had not expected the transfer to be permanent and she had believed that if she asked Gilbert to return the Ranch, he would do so. Marie's attorney asked Gilbert to allow Marie to return to the Ranch, and Gilbert again refused. Marie then executed a general durable power of attorney and a medical durable power of attorney designating both Teresa and Gilbert as co-agents. These powers of attorney were later revoked in March 2018, and Teresa was designated the sole person

4

with general durable power of attorney and medical durable power of attorney.

¶ 11    Because Gilbert refused to provide Teresa with Marie's bank records, Teresa requested the bank records from the bank after she became Marie's sole agent. Teresa discovered that, from December 2016 through March 20, 2018, Gilbert had transferred in excess of $59,000 from Marie's account into his commercial bank account. He said that the transfers were to prevent his sisters from getting Marie's money. Teresa asked Marie if she knew about the bank transfers and Marie said no. Marie wanted her money to remain in her own bank account.

¶ 12    Teresa then filed a petition to appoint herself as special conservator for Marie. The trial court granted the petition and limited her authority to "(1) securing and applying [Marie's] assets and income for [Marie's] health, maintenance, and support; (2) investigating Marie's estate plan; and (3) filing a Notice of Lis Pendens on [the Ranch]." As special conservator, Teresa demanded the return of funds that were used for expenses associated with the Ranch and transferred from Marie's bank account into Gilbert's commercial bank account. Gilbert complied with the demand and

paid Teresa's attorney $70,901.17. The court later ordered Gilbert to allow Teresa access to the Ranch to prepare an inventory of any and all of Marie's personal property. But when she arrived, Teresa was unable to locate any of Marie's personal property because Gilbert had already donated most of it.

¶ 13 The Estate filed a petition to void the quitclaim deed transferring the Ranch from Marie to Gilbert. The Estate also brought claims against Gilbert for breach of fiduciary duty, unjust enrichment, and civil theft related to the transfer of the Ranch and the money transfers from Marie's bank account. It requested, as remedies, a surcharge for the breach of fiduciary duty claim, a constructive trust for the unjust enrichment claim, and the voiding of the quitclaim deed. In his response, Gilbert asserted a cross-claim of promissory estoppel for the quitclaim deed and demanded a jury trial. The Estate raised the affirmative defense of unclean hands, among others.

¶ 14 On the morning of trial, the Estate, through counsel, objected to treating jury verdicts for the breach of fiduciary duty and unjust enrichment claims as binding because those claims were equitable in nature. But the Estate agreed that the civil theft claim should be

presented to the jury. Gilbert responded that the Estate had consented to a jury trial under C.R.C.P. 39(c) and that all claims should be presented to the jury. The trial court denied the Estate's objection, concluding that the breach of fiduciary duty and unjust enrichment claims could be tried to a jury. The court did, however, agree that the claims for a surcharge and a constructive trust, as well as the defense of unclean hands, were equitable issues to be decided by the court after the trial.

¶ 15    The jury returned verdicts in the Estate's favor on the breach of fiduciary duty and unjust enrichment claims. The jury also returned a verdict in the Estate's favor on the civil theft claim but only for the money transferred out of Marie's account. It then made the following damages findings:

- Gilbert received $775,000 from breaching his fiduciary duty and Marie lost $775,000 in property or assets as a result of the breach.

- Gilbert was unjustly enriched in the amount of $845,901.17.[3]

---

[3] This value represents the combined value of the Ranch and the value of the money transferred out of Marie's bank account.

- Marie lost $70,901.17 as a result of the civil theft.

However, the jury returned a verdict in Gilbert's favor on the promissory estoppel claim and declined to rescind or void the quitclaim deed.

¶ 16 After trial, the trial court issued an order addressing the jury's verdicts and the remaining equitable claims. First, the court found that Marie intended to give the Ranch to Gilbert by signing the deed and that Gilbert had not acted "in any manner to overcome her will to the extent that she was prevented from voluntary action and was deprived of free agency." Thus, it rejected the Estate's unclean hands defense and gave effect to the jury's promissory estoppel verdict. And second, consistent with its unclean hands ruling, the court declined to impose a constructive trust on the Ranch. Finally, the court offset the $70,901.17 Gilbert had repaid the Estate before trial from the jury's damages award for civil theft. Because the order was then zero, the court denied treble damages. Therefore, the court entered an order in the Estate's favor for breach of fiduciary duty and civil theft, and it awarded the Estate $775,000 in damages. It then entered an order for Gilbert on the promissory estoppel claim and ruled that he could retain title to the Ranch.

8

The court declined to enter an order in the Estate's favor on the unjust enrichment claim and found that the award duplicated the awards on the breach of fiduciary duty and civil theft claims.

¶ 17 Later, the court held a hearing on the parties' requests for attorney fees and costs. The court found that the Estate and Teresa, as special conservator, were entitled to surcharges under section 15-10-605(1), C.R.S. 2021, and awarded them attorney fees and costs on all their successful claims. It denied Gilbert's request for attorney fees and costs under section 15-10-602(1)-(6), C.R.S. 2021. Because Gilbert had engaged in a self-interested transaction when transferring the Ranch to himself, the court found that he had defended the breach of fiduciary duty claim in bad faith and was, therefore, ineligible for fees and costs.

## II.    Jury Instructions

¶ 18 Gilbert first contends that the trial court erroneously rejected his attorney's proposed jury instructions on (1) undue influence; (2) capacity; (3) knowledge of an agent imputable to the principal; (4) acknowledged deeds; (5) multi-party accounts; and (6) nominee accounts. Specifically, he argues that he was entitled to these

instructions because they embodied his theory of the case. We disagree.

## A. Preservation and Standard of Review

¶ 19 We review a trial court's decision to tender a particular jury instruction for an abuse of discretion. *Schuessler v. Wolter*, 2012 COA 86, ¶ 10. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or is based on a misapprehension or misapplication of the law. *Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 28.

¶ 20 The Estate contends that this issue is unpreserved because Gilbert's counsel did not object to the district court's rejection of the proposed instructions. An alleged instructional error is unpreserved when the "trial court requests input from the parties on the proposed instructions, and a party affirms that it has no objections to any of them." *Hendricks v. Allied Waste Transp., Inc*, 2012 COA 88, ¶ 31. However, absent these circumstances, tendering a jury instruction is sufficient to preserve the alleged instructional error for appeal. *Id.*; *see also People v. Tardif*, 2017 COA 136, ¶ 10 ("An alleged instructional error is preserved if the defendant tenders the desired relevant instruction even if the

10

defendant does not object or otherwise raise the issue during the jury instruction conference.").

¶ 21 Here, the trial court requested input on one of the proposed instructions — undue influence. Gilbert's counsel argued that this instruction should be submitted to the jury because all claims should be submitted to the jury. Because Gilbert's counsel asked the court to tender the undue influence instruction, and because the court did not ask for input on the remaining proposed instructions before rejecting them, we conclude this issue is preserved. *Cf. Hendricks*, ¶ 32 (concluding the instructional error was waived because the party agreed to the challenged instruction).

¶ 22 We review preserved instructional errors under the harmless error standard. *Waneka v. Clyncke*, 134 P.3d 492, 494 (Colo. App. 2005), *aff'd*, 157 P.3d 1072 (Colo. 2007). We will reverse only if any erroneous refusal to give requested instructions resulted in substantial, prejudicial error. *Schuessler*, ¶ 11. "Prejudicial error exists when the record shows that a jury might have reached a different verdict if a proper instruction had been given." *Id.*

## B.    Analysis

¶ 23    At trial, Gilbert asserted that Marie wanted him to have the Ranch and that he did not exercise any undue influence over her decision to give him the Ranch.  He also asserted that he transferred money from Marie's bank accounts to protect it from being dissipated by his siblings because Marie was unable to manage her finances.  Thus, he argues,  the court's rejection of his instructions for (1) undue influence, *see* CJI-Civ. 34:15 (2022); (2) capacity, *see Anderson v. Lindgren,* 113 Colo. 401, 406-07, 157 P.2d 687, 689 (1945); (3) knowledge of an agent imputable to the principal, *see* CJI-Civ. 8:15 (2022); and (4) acknowledged deeds, *see* § 38-35-101(2), (3)(a), C.R.S. 2021, precluded him from presenting his theory of the case.  *See Schuessler,* ¶ 12 ("A party is entitled to an instruction embodying his or her theory of the case if it is supported by competent evidence and is consistent with existing law.").

¶ 24    The jury was tasked with deciding four claims related to the transfer of the Ranch and the money transfers from Marie's bank account — (1) breach of fiduciary duty; (2) unjust enrichment; (3) civil theft; and (4) promissory estoppel.  Arguably, the rejected

12

instructions were relevant to the Estate's civil theft claim and to Gilbert's promissory estoppel claim. However, we conclude that any error in rejecting the proposed instructions was harmless because the jury found for Gilbert on the promissory estoppel claim, and he has not explained how the absence of these instructions prejudiced him. As the trial court noted, undue influence and capacity are not elements of civil theft and Gilbert was not precluded from arguing that he moved money from Marie's account to his own account to protect it. As well, the jury found that the Estate was unable to rescind or void the quitclaim deed transferring the Ranch to Gilbert. Thus, the jury agreed with Gilbert's theory of the case that the quitclaim deed transferring the Ranch to Gilbert was valid. And the trial court gave effect to the jury's verdicts when it found that Marie intended to transfer the Ranch to Gilbert by signing the quitclaim deed and that title to the Ranch remained with Gilbert.

¶ 25 Concerning the jury's verdicts for the Estate on the breach of fiduciary duty and unjust enrichment claims, we conclude that none of the proposed instructions were relevant to the elements of those claims. As the trial court correctly noted, the jury found that

13

there was a valid transfer, but it also rejected Gilbert's claim that he should not have to pay for the Ranch.

¶ 26 Next, Gilbert contends, in conclusory fashion, that the proposed instructions on multi-party accounts, §§ 15-15-211 to -212, C.R.S 2021, and nominee accounts, § 15-1-502, C.R.S. 2021, related to the money transfers from Marie's bank account. But he failed to develop this argument, so we decline to consider it. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 ("We don't consider undeveloped and unsupported arguments."), *aff'd*, 2021 CO 56.

¶ 27 Finally, to the extent Gilbert contends that the jury should have decided all the claims asserted against him, we conclude that any verdict on the equitable claims would have been advisory and, therefore, not binding on the trial court. *See Am. Pride Co-op. v. Seewald*, 968 P.2d 139, 142 (Colo. App. 1998). And we reject Gilbert's contention that the jury should have been instructed on the trial court's post-verdict findings because such an instruction would have improperly invaded the independent factfinding province of the jury. *See People v. Perez*, 2016 CO 12, ¶ 31 ("The jury, not the court, must perform the fact-finding function when

14

conflicting evidence — and conflicting reasonable inferences — are presented."). As the trial court correctly noted in its post-trial order, the court's "findings are necessarily the Court's findings and are not meant, in any way, to reflect the Court's belief as to the facts found by the jury except as those facts might be ascertained by the verdicts reached by the jury."

¶ 28    Accordingly, we discern no abuse of discretion.

### III.    Inconsistent Verdicts

¶ 29    Gilbert next contends that the jury's verdicts in the Estate's favor on the breach of fiduciary duty, unjust enrichment, and civil theft claims are inconsistent with its verdict in his favor on the promissory estoppel claim. The Estate argues that this issue was not preserved for our review. It argues that Gilbert's attorney was required to object to the verdict forms before they were submitted to the jury. *See Bear Valley Church of Christ v. DeBose*, 928 P.2d 1315, 1330 (Colo. 1996) ("According to our rules of civil procedure, a party cannot seek appellate review of the propriety of a jury instruction unless counsel tenders such an objection prior to the court's presentation of the instructions to the jury . . . ."). We agree that this issue is unpreserved, but for a different reason. *See*

*Taylor v. Taylor*, 2016 COA 100, ¶ 31 ("An appellate court may . . . affirm on any ground supported by the record.").

¶ 30 Contrary to the Estate's contention, Gilbert does not challenge the verdict forms or the propriety of the jury instructions. Instead, he challenges the consistency of the jury's verdicts themselves. Thus, Gilbert's attorney was not required to object to the verdict forms before they were tendered to the jury to preserve this issue for appeal. *Cf. Nichols v. Burlington N. & Santa Fe Ry. Co.*, 148 P.3d 212 (Colo. App. 2006) (finding waiver where counsel did not object to the order of conditions on the special verdict form before that form was submitted to the jury).

¶ 31 Whether a party waives the right to challenge an inconsistent verdict on appeal turns on the characterization of the verdict. *Morales v. Golston,* 141 P.3d 901, 905 (Colo. App. 2005). If a party fails to object to a general verdict or a general verdict coupled with written interrogatories before the jury is discharged, the party "waives any future challenge to the inconsistency because its failure to object timely deprives the court of the option of sending the jury back for further deliberations." *Id.*; *see also* C.R.C.P. 49(b). But, because any inconsistencies in a special verdict would not be

resubmitted to the jury, a party is not required to object to the special verdict before the jury is discharged to preserve the right to challenge the inconsistencies. *Morales,* 141 P.3d at 905; *see also* C.R.C.P. 49(a).

¶ 32     We conclude that the verdicts here were general verdicts accompanied by answers to interrogatories rather than special verdicts. *See Morales,* 141 P.3d at 906 ("[T]he hallmark of a general verdict is that it requires the jury to announce the 'ultimate legal result of each claim.'" (quoting *Johnson v. ABLT Trucking Co.,* 412 F.3d 1138, 1142 (10th Cir. 2005))). Consequently, because Gilbert's counsel failed to object to the general verdicts before the jury was discharged, he waived the inconsistent verdicts issue for purposes of appeal. *See id.* at 905.

## IV.    Sufficiency

¶ 33     Gilbert also contends that the jury's verdict finding a breach of fiduciary duty and the court's equitable ruling denying the Estate's request to void the deed transferring the Ranch to him are inconsistent. Specifically, he asserts that because Marie intended to transfer the Ranch to him, he could not have violated his fiduciary duty in carrying out her wish. As best we can discern, he

17

asks us to vacate the breach of fiduciary duty verdict by arguing that "[t]he very nature of the Court's determinations preclude[s] a finding that the Transfer was a breach of a fiduciary duty." We construe his argument as one challenging the sufficiency of the evidence to support the breach of fiduciary duty verdict, which we address below in Part IV.B. In doing so, we reject the Estate's contention that this claim of error was not preserved. Because the court made its equitable findings after the jury's verdict, Gilbert's post-trial motion preserved this issue for our review. *See Briargate at Seventeenth Ave. Owners Ass'n v. Nelson*, 2021 COA 78M, ¶ 66 ("Objections to trial court rulings must be made contemporaneously with the court's actions before appellate review is afforded.").

¶ 34    Further, Gilbert contends that there was insufficient evidence to support the jury's verdicts in the Estate's favor on the breach of fiduciary duty, unjust enrichment, and civil theft claims. We disagree.

### A.    Standard of Review

¶ 35    "When a jury verdict is challenged on the grounds that it is unsupported by the evidence, we must review the entire record to determine whether there is competent evidence from which the jury

logically could have reached its verdict." *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 34. In doing so, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the verdict. *Black v. Black*, 2018 COA 7, ¶ 92.

## B. Breach of Fiduciary Duty

¶ 36    To recover on a claim for breach of fiduciary duty, "a plaintiff must prove: 1) that the defendant was acting as a fiduciary of the plaintiff; 2) that he breached a fiduciary duty to the plaintiff; 3) that the plaintiff incurred damages; and 4) that the defendant's breach of fiduciary duty was a cause of the plaintiff's damages." *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993).

¶ 37    A party who has been appointed as a fiduciary pursuant to a power of attorney has a duty to

> (a) [a]ct in accordance with the principal's reasonable expectations to the extent actually known by the agent and, otherwise, in the principal's best interest;
>
> (b) [a]ct in good faith; and
>
> (c) [a]ct only within the scope of authority granted in the power of attorney.

19

§ 15-14-714(1), C.R.S. 2021. As well, the fiduciary "shall . . . [a]ct so as not to create a conflict of interest that impairs the agent's ability to act impartially in the principal's best interest." § 15-14-714(2)(b).

¶ 38 Relying on the jury's verdict in his favor on the promissory estoppel claim and the trial court's post-verdict findings that Marie intentionally transferred the Ranch to him and that she did so without undue influence, Gilbert contends there is insufficient evidence to show that he breached his fiduciary duty. However, the valid transfer and absence of undue influence do not necessarily negate a finding of a breach of a fiduciary duty. Instead, we conclude the record contains sufficient evidence that Gilbert breached his fiduciary duty by engaging in a self-interested transaction that created a conflict of interest, and thereby impaired his ability to act in Marie's best interest.[4]

---

[4] The jury's verdict in the Estate's favor on the breach of fiduciary duty claim was limited to the value of the Ranch. Thus, the jury did not find that Gilbert breached his fiduciary duty when he transferred money out of Marie's bank account and into his commercial bank account.

¶ 39     While Marie was an inpatient at the rehabilitation facility, Gilbert drafted the quitclaim deed transferring the Ranch to himself and his wife, drove Marie to her bank where she executed the deed, and recorded the deed.  Although we acknowledge that Marie requested this transfer, Gilbert, as her fiduciary, did nothing to mitigate any conflict of interest or to ascertain whether the transfer was in Marie's best interest.  Gilbert testified that he asked Marie if she wanted to consult her estate attorney and Marie declined.  Even if true, Gilbert communicated with Marie's attorney regularly and Gilbert voiced his concerns about family pressures on multiple occasions.  Thus, in carrying out his fiduciary duty, he could have consulted Marie's attorney before executing the deed.  But he did not reveal the transfer to Marie's attorney until approximately ten months after recording the quitclaim deed.

¶ 40     Further, Gilbert retained title to the Ranch without consideration with the expectation that he would care for the property while Marie was at the rehabilitation facility.  Without her knowledge, Gilbert continued to use Marie's money to pay for utilities and expenses for the Ranch.  However, when Marie asked to return to the Ranch, Gilbert refused.  Marie then told her

21

attorney that she did not believe the transfer was permanent and that she reasonably expected that she could return to the Ranch upon request.

¶ 41    Finally, Gilbert changed the locks to the gates on the Ranch and to the house, restricting his siblings' access to the home. He also donated most of Marie's personal property, thereby precluding Teresa from inventorying Marie's property as special conservator.

¶ 42    As the trial court noted, the record shows that, while Marie intended to transfer the Ranch to Gilbert, she did not intend to do so without consideration. Accordingly, sufficient evidence supports the jury's finding that Gilbert breached his fiduciary duty when he retained title to the Ranch by way of the quitclaim deed.

## C.    Unjust Enrichment

¶ 43    Unjust enrichment is a "judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008). To prevail on a claim for unjust enrichment, the plaintiff must prove that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the

defendant to retain the benefit without commensurate compensation." *Id.*

¶ 44 The jury found that Gilbert was unjustly enriched by the transfer of the Ranch without consideration and by the money transfers out of Marie's account. Gilbert does not contend that he did not receive a benefit at Marie's expense by engaging in these transactions. Instead, he relies on the trial court's finding that Marie transferred the Ranch to him without undue influence. But in doing so, he ignores the jury's finding and the trial court's finding that Marie did not intend to transfer the Ranch to him without consideration. Thus, Gilbert received the Ranch at Marie's expense, and, for the reasons explained in Part IV.B, he did so under unjust circumstances.

¶ 45 We further conclude that the following trial evidence sufficiently shows that Gilbert was unjustly enriched. Gilbert repeatedly told Marie's estate attorney and his siblings that he was concerned about Marie's finances and that she was running out of money. But, without their or Marie's knowledge, he transferred more than $59,000 from Marie's account to his. And he used Marie's money to maintain the Ranch that he owned.

23

¶ 46    Additionally, the bank mailed Marie's bank statements to the Ranch when she lived at the rehabilitation facility, and she testified that she had not seen her bank statements in years. Further, after Teresa became co-agent, Gilbert withheld Marie's bank statements from Teresa. Teresa was unable to access the statements until she was designated Marie's sole agent.

## D.    Civil Theft

¶ 47    To prevail on a claim for civil theft, "a party must prove, by a preponderance of the evidence, that the defendant committed all of the elements of criminal theft." *Black*, ¶ 93. A person commits civil theft when he (1) knowingly obtained, retained, or exercised control over "anything of value of another without authorization or by threat or deception"; and (2) acted intentionally or knowingly in ways that deprived the plaintiff of the thing of value permanently. § 18-4-401(1), C.R.S. 2021; *Scott v. Scott*, 2018 COA 25, ¶ 26. "Thus, civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property." *Scott*, ¶ 26. And a party's intent is a question of fact to be determined by the fact finder. *Nixon v. City & Cnty. of Denver*, 2014 COA 172, ¶ 31.

24

¶ 48   Gilbert contends that there is insufficient evidence of civil theft because he repaid the $70,901.17 that he had transferred out of Marie's bank account.  However, returning funds taken from Marie's account is not a defense to civil theft.  *See People v. Pedrie*, 727 P.2d 859, 863 (Colo. 1986) ("The fact that stolen property was eventually returned is not a defense to a theft charge.").  As well, Gilbert did not return the funds until Teresa, in her capacity as special conservator, discovered the transfers and demanded the return of the funds.  Under these circumstances, and considering the evidence that Marie had no knowledge of the bank transfers, we conclude there is sufficient evidence that Gilbert obtained $70,901.17 of Marie's funds with the intent to deprive Marie of those funds.

## V.   Trial Attorney Fees and Costs

¶ 49   Gilbert last contends that, as the prevailing party on appeal, the trial court's award of attorney fees and costs to the Estate should be reversed.  However, we have discerned no error in the trial court's order in the Estate's favor and, therefore, decline to reverse the court's award of attorney fees and costs.

## VI. Appellate Attorney Fees and Costs

¶ 50    Gilbert requests an award of attorney fees and costs incurred on appeal pursuant to section 15-10-602. We deny the request because he does not explain the legal and factual basis for an award. *See* C.A.R. 39.1. Specifically, he does not identify which provision of section 15-10-602 applies, nor does he explain why he is entitled to attorney fees and costs under this statute. *Herbst v. Univ. of Colo. Found.*, 2022 COA 38, ¶ 20.

## VII. Cross-Appeal

¶ 51    The Estate contends that the trial court erred by deducting the returned funds from the jury's damages award before trebling the damages. We agree.

### A. Standard of Review and Applicable Law

¶ 52    The trial court "has the sole prerogative to assess the amount of damages, and its award will not be set aside unless it is manifestly and clearly erroneous." *Lawry v. Palm*, 192 P.3d 550, 565 (Colo. App. 2008). However, whether the district court misapplied the law when determining the measure of damages presents a question of law that we review de novo. *Sos v. Roaring Fork Transp. Auth.*, 2017 COA 142, ¶ 37.

¶ 53    We also review questions of statutory interpretation de novo. *Garhart v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 591 (Colo. 2004). When construing a statute, our primary objective is to ascertain and give effect to the General Assembly's intent. *Id.* If more than one statute addresses an issue, we must construe the related provisions as a whole and read the statutes together. *Foiles v. Whittman*, 233 P.3d 697, 699 (Colo. 2010). We begin with the plain language of the statute, and "if we can clearly discern intent from the language, we need look no further." *Garhart*, 95 P.3d at 591.

¶ 54    Section 18-4-405, C.R.S. 2021, provides as follows:

> All property obtained by theft, robbery, or burglary shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. The owner may maintain an action not only against the taker thereof but also against any person in whose possession he finds the property. In any such action, *the owner may recover two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater*, and may also recover costs of the action and reasonable attorney fees; but monetary damages and attorney fees shall not be recoverable from a good-faith purchaser or good-faith holder of the property.

(Emphasis added.)

¶ 55 To be awarded treble damages, a plaintiff need only prove that the defendant committed acts constituting the statutory crime of theft. *Itin v. Ungar*, 17 P.3d 129, 133 (Colo. 2000). If all of the elements of civil theft have been proved by a preponderance of the evidence, the trial court lacks discretion to decline to award treble damages. *Franklin Drilling & Blasting, Inc. v. Lawrence Constr. Co.*, 2018 COA 59, ¶ 25 n.5.

## B. Analysis

¶ 56 The trial court calculated the civil theft damages by offsetting the $70,901.17 Gilbert repaid to the Estate before trebling the damages. Because the jury awarded the Estate $70,901.17 in actual damages, the offset resulted in a net order of zero. Thus, the trial court ruled that it had "nothing to treble." We conclude, for three reasons, that the trial court erred by offsetting the repayment before trebling the damages.

¶ 57 First, nothing in section 18-4-405 provides for an offset to actual damages based on the return of property obtained by theft before trebling the damages. Instead, the statute provides for both the return of the property obtained by theft *and* treble damages in

28

the amount of "two hundred dollars or three times the amount of the actual damages sustained by him, whichever is greater." *Id.* Absent some statutory command, the statute provides no basis for such an offset. *See Am. Fam. Mut. Ins. Co. v. Barriga*, 2018 CO 42, ¶¶ 10-11 (concluding that, absent some statutory command, the statutory penalty in section 10-3-1116(1), C.R.S. 2021, precludes a setoff for an insurer's prior payment of the covered benefit itself in calculating the penalty owed).

¶ 58 Second, "the placement of the rights in stolen property statute in the Criminal Code and its allowance of treble damages 'strongly suggest that [the] section was intended to serve primarily a punitive, rather than a remedial, purpose.'" *Bermel v. BlueRadios, Inc.*, 2019 CO 31, ¶ 30 (quoting *In re Marriage of Allen*, 724 P.2d 651, 656 (Colo. 1986)). Indeed, the "availability of treble damages and attorney fees for civil theft reflects the legislature's displeasure with the proscribed conduct and its desire to deter it." *Id.* at ¶ 35. Therefore, we conclude that recognizing an offset of the returned property before the actual damages are trebled contravenes the purpose of the statute. And because an offset for returned property before trebling the damages verdict would result in an award less

than what the statute contemplates, such action risks disincentivizing individuals from bringing civil theft claims.

¶ 59    Third, we find federal case law interpreting Section 4 of the Clayton Act, a federal antitrust statute, instructive and persuasive. *See* 15 U.S.C. § 15; *see also Vining v. Martyn*, 660 So. 2d 1081, 1082 (Fla. Dist. Ct. App. 1995) (finding federal case law persuasive, the division concluded that any offset of settlement payments received prior to the civil theft verdict must occur after the verdict is trebled).

¶ 60    Like section 18-4-405, Section 4 provides that a plaintiff may recover actual damages and "threefold the damages by him sustained" as a result of an antitrust violation.  15 U.S.C. § 15(a). Federal courts have consistently held that district courts should first treble the amount of the jury's verdict and then subtract any amount already paid in settlement.  *See Flintkote Co. v. Lysfjord*, 246 F.2d 368, 397-98 (9th Cir. 1957); *Hydrolevel Corp. v. Am. Soc'y of Mech. Eng'rs, Inc.*, 635 F.2d 118, 130 (2d Cir. 1980), *aff'd*, 456 U.S. 556 (1982); *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 391-92 (4th Cir. 1982) ("[T]he . . . unbroken rule has been that any settlement payments are deducted from the damages award after

trebling."). The court in *Hydrolevel Corp.* identified three reasons for trebling damages before deducting settlement proceeds: (1) the statute provides that the plaintiff should receive three times the proven actual damages; (2) reducing the amount of damages trebled would weaken the incentive for private plaintiffs to file suit; and (3) the deduction of the settlement proceeds would discourage settlement before a verdict. 635 F.2d at 130 (citing *Flintkote Co.*, 246 F.2d 368). We find these reasons persuasive and applicable to our interpretation of section 18-4-405.

¶ 61 Accordingly, we conclude the court erred by deducting the $70,901.17 repaid to the Estate from the jury's damages verdict before trebling the actual damages. The trial court should first treble the amount of actual damages and then subtract the $70,901.17 repaid. We therefore reverse the trial court's order on the civil theft claim in part and remand for the court to award the Estate $212,703.51 in treble damages on that claim.

## VIII. Conclusion

¶ 62 We reverse the trial court's award on the civil theft claim in part and remand for the trial court to award the Estate

31

$212,703.51 in treble damages on that claim.  The order is otherwise affirmed.

JUDGE FOX and JUDGE GOMEZ concur.